447 So.2d 534 (1984)
Shirley KNIGHTEN, Appellee,
v.
Thomas KNIGHTEN, Interdict, Appellant.
No. 16056-CA.
Court of Appeal of Louisiana, Second Circuit.
February 21, 1984.
Writ Denied April 13, 1984.
*536 C. Michael Hill, Lafayette, for appellee.
Hudson, Potts & Bernstein by Robert M. Baldwin, Monroe, for third party defendant-appellee Clyde Lain, II.
William E. Armstrong, Monroe, for defendant-third party plaintiff-appellant.
Before HALL, JASPER E. JONES and SEXTON, JJ.
JASPER E. JONES, Judge.
The plaintiff, Shirley Knighten, filed suit against the curatrix of her husband's estate to collect on a promissory note payable to her. The note was issued in connection with a matrimonial agreement which terminated the community and partitioned the community property. The agreement was approved by the court. The curatrix filed a reconventional demand seeking to void the note on the grounds the matrimonial agreement is invalid. She also seeks to recover all amounts plaintiff was paid under the agreement. The curatrix filed a third party demand against Clyde Lain, II, the attorney who advised her to enter the matrimonial agreement on her ward's behalf, for malpractice.
After a trial on the merits the trial court rendered judgment awarding plaintiff $48,000.00, the principal balance on the note plus interest and $1,000.00 attorney's fees. The judgment rejected the curatrix' reconventional and third party demands. The curatrix appealed. Plaintiff answered the appeal seeking an increase in attorney's fees. We amend the lower court judgment to increase the award for attorney's fees and as amended affirm.

FACTS'
On July 24, 1980 plaintiff's husband, Thomas Knighten, was severely injured in an automobile accident near Berwick, Louisiana. He was taken to a hospital in Houston, Texas. Plaintiff stayed with him while he was in the hospital.
At the time of the accident Thomas and plaintiff were legally married but had been physically separated for over a year. The community of acquets and gains was still in existence since neither party had filed separation or divorce proceedings.
After his release from the hospital, Thomas was moved to his mother's home in Monroe, Louisiana. Plaintiff moved into the mother's house with him for a while but afterwards returned to her separate residence.
The injuries to Thomas left him unable to care for his person or property. After a few months it became apparent his condition was permanent and he needed to be interdicted since this was necessary in order *537 to pursue his substantial personal injury claim arising from the accident.
A contest arose over who would be named curatrix for Thomas. The contestants were plaintiff, Thomas' mother and his ex-wife, Elizabeth Hamilton, who was the natural tutrix of his five children.[1] Each contestant hired an attorney to secure for her the appointment as curatrix. The mother hired Clyde Lain, II.
The interdiction proceedings moved forward and a judgment of interdiction was rendered April 24, 1981. The judgment did not name a curatrix. The selection of the curatrix was resolved by an agreement negotiated by the attorneys which the three contestants signed June 22, 1981. This agreement provided that the mother would be named curatrix and plaintiff along with Elizabeth Hamilton would be named co-undercuratrixes. It was also provided that all three of the attorneys who negotiated the agreement would be hired to prosecute Thomas' personal injury claim. The agreement contained additional provisions dealing with how the proceeds from the personal injury claim would be distributed in settlement of the co-undercuratrixes' claims against Thomas' estate, if the claim grossed at least $600,000.00. In respect to plaintiff, the agreement provided:
(2) Appearer Shirley Knighten for good and valuable consideration consents and agrees that out of the proceeds of any settlement or judgment that the Interdict and his estate may derive as a result of the Interdict's accident and injuries of July 24, 1980, she will accept, in a lump sum adjudication to her, the sum of $50,000.00 cash, and in addition, shall accept an additional $50,000.00, payable at the rate of $500.00 per month on the first day of each month commencing immediately after the Interdict's settlement or judgment proceeds are realized, until fully and finally paid, and bearing interest at the rate of six (6%) per cent per annum, which deferred payments shall be mandated by order of the Court pursuant to petition for authority therefor which the Curatrix hereby agrees to submit, and which shall be further evidenced by the Curatrix' promissory note in accordance therewith. Upon performance and delivery of the obligations and moneys contemplated by this paragraph, Shirley Knighten agrees to release and discharge the interdict and his estate from such rights and claims as she may have as a present or former partner in community with the Interdict, and to seek, if necessary, to effectuate the provisions of this paragraph, Court authority to terminate the regime of community of acquets and gains existing between Thomas Knighten and herself and further agrees to hold harmless, defend and indemnify the Interdict and his estate against claims on the part of Shirley Knighten for amounts greater than those set forth in this paragraph, provided the agreements and obligations set forth in this paragraph are carried out, performed and transacted by all parties. The Curatrix and Elizabeth Hamilton agree unconditionally to perform all acts necessary to perform and execute all matters set forth in this Part (2) of this agreement.
Once this agreement was reached, appellant qualified as curatrix of the interdict and pursued the personal injury claim. That claim was eventually settled. Under the terms of the settlement Thomas received a lump sum payment of $300,000.00 plus an annuity of $3,000.00 a month for life or 20 years whichever is longer. In the event Thomas should die within 20 years the annuity would be paid into his estate. In addition, Thomas' medical expenses totalling over $150,000.00 were paid and each of his five children are to receive $200.00 per month until reaching the age of majority.[2]
*538 The settlement was approved in chambers by then district judge William Norris, III on December 4, 1981. All three of the contestants for curatrix were present with counsel. At the same meeting Judge Norris approved the terms of the June 22, 1981 agreement. At the same chambers hearing a joint petition of plaintiff and appellant for approval of a matrimonial agreement terminating the community together with the matrimonial agreement prepared pursuant to the June 22 agreement was presented to Judge Norris for his approval. He signed an order approving this agreement after assuring himself that plaintiff and the curatrix understood the nature of his action and after determining it was in the spouses' best interest to do so. In performance of this matrimonial agreement plaintiff was paid $50,000.00 in cash and she was given a note for $50,000.00 executed by her husband's curatrix payable in accordance with the terms of the agreement.
The first four installments on the note, up through the April, 1982 installment, were paid. Thereafter, the curatrix ceased paying the installments. She testified she discontinued the payments after Judge Fudickar, who she went to see for approval of the fifth payment, questioned the validity of the separation of property agreement and order signed by Judge Norris and refused to approve the payment. Plaintiff made several demands on the curatrix to make the payments but she refused. Plaintiff then filed suit to collect the $48,000.00 principal balance together with interest and attorney's fees.[3]
The primary issue presented in this appeal on the main and reconventional demand is whether the matrimonial agreement is invalid for lack of consideration or for lesion. The issue raised by the answer to the appeal is whether plaintiff is entitled to have her attorney fee award increased. The issues raised by the appeal from the rejection of the third party malpractice demand are whether this action is prescribed and if not should it be denied on the merits.
Those preliminary and secondary issues raised in the briefs of the litigants which require some discussion will be addressed in the course of the opinion.

MAIN DEMAND AND RECONVENTIONAL DEMAND
We first address plaintiff's argument that the curatrix improperly raised the issue of the validity of a judicially homologated matrimonial agreement in a collateral proceeding. The argument is based on the recent decision of Zeringue v. Zeringue, 442 So.2d 1211 (La.App. 5th Cir. 1983). In that case a divorced husband sued to rescind a community property partition between he and his ex-wife which had been judicially homologated. The fifth circuit held that once the partition was homologated it became a thing adjudged and as such the trial court correctly sustained the ex-wife's exception of res judicata. In the instant case plaintiff did not plead res judicata either by exception or in her answer to the reconventional demand and this court cannot supply the objection for her. La.C. C.P. 927.[4]
The curatrix contends the trial court erred in not granting the reconventional demand because the separation of property agreement was invalid for lack of consideration and for lesion beyond one-fourth under La.C.C. 1861.[5]
At the time the community was terminated on December 4, 1981 the sole asset in the community and in Thomas' separate estate was the proceeds from the personal *539 injury claim. The way the personal injury recovery is to be divided between the community and Thomas' separate estate is provided for in La.C.C. 2344, which states:
Damages due to personal injuries sustained during the existence of the community by a spouse are separate property.
Nevertheless, the portion of the damages attributable to expenses incurred by the community as a result of the injury, or in compensation of the loss of community earnings, is community property. If the community regime is terminated otherwise than by the death of the injured spouse, the portion of the damages attributable to the loss of earnings that would have accrued after termination of the community property regime is the separate property of the injured spouse. (emphasis supplied)
The curatrix' lesion claim is based on the last sentence of C.C. 2344. She contends that when plaintiff voluntarily terminated the community her share of the personal injury settlement was limited to one-half of what would be considered community property under C.C. 2344. She asserts the only part of the settlement that would be part of the community is an amount representing actual lost wages between the date of the accident, July 24, 1980, and the date the community was terminated, December 4, 1981, a period of approximately one and one-half years. The testimony at trial established that Thomas had only earned between $6,000.00 and $10,000.00 a year prior to the accident and based upon these past earnings appellant contends plaintiff was at most entitled to $7,500.00. Appellant argues that since plaintiff received $100,000.00, Thomas received less than three-fourths of his share of the loss of earnings included in the settlement by the terms of the matrimonial agreement and he is entitled to have that agreement set aside for lesion.
We do not agree. This argument ignores the fact that plaintiff would not have terminated the community except for the provisions of the matrimonial agreement wherein she received the $100,000.00. If she had not entered the agreement the community would not have been terminated and plaintiff would have been entitled to one-half of all sums included in the settlement attributable to loss of community earnings. Although the personal injury settlement does not allocate any specific amount to lost wages Thomas, age 36, was employed as an off shore welder, and it can be assumed that in a personal injury settlement of over $1,000,000.00 more than $200,000.00 is attributable to lost wages.[6] It is apparent from these observations plaintiff gave up the opportunity to leave the community in effect and claim a much larger sum of money than she actually received by agreeing to terminate the community.
Having found the separation of property agreement was not lesionary, it follows that we also find it was supported by valid consideration. In return for the $100,000.00 plaintiff gave up the right to make any future claim against Thomas' estate. She gave up the valuable right to have maintained the community in effect and to have perhaps obtained far more than $100,000.00 from the proceeds of the interdict's personal injury claim. This right which she brought to an end in the matrimonial agreement was a valuable property right and the surrender of it was adequate consideration for the money she received.
In absence of a separation or a divorce, under Louisiana community property law persons already married and living under a community property regime can have the community terminated only with judicial approval. La.C.C. 2329.[7] Before *540 granting the termination the judge must determine that it serves the best interest of the spouses and they understand what they are doing. C.C. 2329. This court has recently held that when a party contends he received inadequate or no consideration in a matrimonial agreement, he in effect contends the partition is invalid because it is not to his best interest. Heyl v. Heyl, Administrator, 445 So.2d 88 (La.App. 2d Cir.1984). Judge Norris correctly determined that the termination agreement was in the spouses best interest[8] because the wife received $100,000.00 and the interdict was relieved of any further claims by her against his personal injury settlement
The trial court properly awarded plaintiff a judgment on her note and defendant's reconventional demand lacks merit.

THIRD PARTY DEMAND
The third party demand for malpractice against Clyde Lain, II is based upon his advising the curatrix to enter the June 22, 1981 agreement and the matrimonial agreement executed pursuant to it. The appellant contends that Lain should have advised her to terminate the community between plaintiff and the interdict by obtaining a divorce for the interdict. The following additional facts are pertinent to the issues raised in connection with that demand.
The petition on the main demand was filed September 13, 1982 and the curatrix was served September 24, 1982. The curatrix filed an answer to that demand October 22, 1982. She subsequently filed the third party demand March 7, 1983. Along with that demand she filed interrogatories addressed to Lain. The third party demand and interrogatories were served on Lain March 14, 1983. Lain filed an exception of prescription to the third party demand March 18, 1983. A hearing on the exception was scheduled for April 26, 1983 while the trial on the main demand was scheduled and held April 25, 1983. Lain's answer to the third party demand was filed and a copy given to the curatrix the morning of the trial. Lain never answered the interrogatories but the curatrix did not file a motion to compel his answers.
When the trial on the main demand began the trial judge decided to try all demands together over the curatrix' oral motion to continue the trial of the third party demand. The trial judge also decided to refer the exception of prescription to the merits over the curatrix' objection. After the trial on the merits the trial judge found the third party demand had prescribed and he rejected it on the merits.
On appeal the curatrix raises four assignments of error in connection with the trial court's actions on the third party demand. She claims the trial court erred in:
(1) refusing to grant the continuance;
(2) referring the exception of prescription to the merits;
(3) finding the demand had prescribed; and
(4) rejecting the demand on the merits.
(1) continuance
The oral motion to continue was based upon Lain's answer to the third party demand not being filed until the day of trial and upon his failure to answer the interrogatories. The curatrix contends the motion should have been granted under either La.C.C.P. 1601 or 1602. These articles provide:
Art. 1601. Discretionary grounds
A continuance may be granted in any case if there is good ground therefor.

*541 Art. 1602. Peremptory grounds
A continuance shall be granted if at the time a case is to be tried, the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case; or that a material witness has absented himself without the contrivance of the party applying for the continuance.
The curatrix has failed to establish she was entitled to a mandatory continuance under C.C.P. 1602. She merely argues she was unable to obtain evidence material to her case because of Lain's untimely answer and failure to answer the interrogatories. She has failed to assert what evidence she was unable to obtain or how that evidence was material to her case. She has also failed to show that the trial court abused its discretion in refusing to grant the continuance under C.C.P. 1601. She had known for over a month that Lain was defending the third party demand on the grounds of prescription. She also had her day in court and was able to thoroughly cross examine Lain.
It is apparent from the judge's ruling denying the continuance that the appellant was aware on February 11th that the entire case would be tried on April 25th including appellant's third party demand which appellant had apparently attempted to assert in a pretrial statement. The judge at the time of the pretrial hearing had advised appellant to assert the third party demand in proper pleading.[9]
This assignment of error lacks merit. (2) referral of exception to merits
The curatrix contends the trial court erred in referring the exception of prescription to the merits because the exception was filed before the answer. La.C. C.P. 929 provides that when a peremptory exception is pleaded before the answer, it shall be tried and decided in advance of the case. Despite the mandatory language of C.C.P. 929 the decision of whether to refer a peremptory exception to the merits is held to be a matter within the trial court's discretion. Ward v. Standard Materials, Incorporated, 293 So.2d 885 (La.App. 1st Cir.1974). See also, Official Revision Comments (b) under Article 929 and the authorities cited therein. We find no abuse of the trial court's discretion in deciding to refer the exception of prescription to the merits.
This assignment of error lacks merit. (3) prescription
The curatrix contends the trial court erred in finding that the action for legal malpractice against Lain was subject to a one year prescriptive period rather than the ten year prescriptive period for contracts under La.C.C. 3544. There is currently a split among the other circuits on this issue.
The first circuit has held that an action for malpractice against an attorney normally states a cause of action in tort and is subject to a one year prescriptive period under La.C.C. 3536. Cherokee Restaurant, Inc. v. Pierson, 428 So.2d 995 (La. App. 1st Cir.1983), writs den., 431 So.2d 773 (La.1983). In that case, the court states that the cause of action is in contract, and subject to a ten year prescriptive period, only if the attorney expressly warrants a particular result and fails to reach that result or if he agrees to perform certain work and does nothing whatsoever. In arriving at this decision the first circuit adopted the reasoning of the supreme court in the medical malpractice decision of Sciacca v. Polizzi, 403 So.2d 728 (La.1981).
The third circuit has expressly rejected the first circuit's approach. Wingate v. National Union Fire Ins. Co., 435 So.2d 594 (La.App. 3d Cir.1983) (see footnote 2, p. 596). In that case the third circuit held *542 that an action for malpractice against an attorney may state a claim in both tort and contract and as such is subject to a ten year prescriptive period.
We find the first circuit's reasoning to be the more persuasive and we, therefore, adopt its holding in Cherokee Restaurant, supra. An action for legal malpractice normally states a cause of action in tort and is subject to a one year prescriptive period. It is only where the attorney warrants a specific result, and fails to obtain that result, or he agrees to perform certain work and does nothing whatsoever, that the cause of action is in contract.
The cause of action in the instant case is clearly in tort. The claim in essence is that Lain negligently gave the curatrix bad advice. The curatrix first hired Lain to secure for her the appointment as curatrix and then to prosecute her son's personal injury claim. Lain did not warrant any particular result in either case and he did the work he was hired for.
Having decided that the cause of action for malpractice against Lain was subject to a one year prescriptive period, we must now decide whether the one year had in fact ran at the time the curatrix filed the third party demand. In order to make this determination it is necessary to decide from what date the one year period is to be calculated.[10]
Lain contends prescription began to run on December 4, 1981, which is the date his alleged acts of negligence resulted in the homologation of the matrimonial agreement. Since the third party demand was filed more than a year later, on March 7, 1983, he claims the cause of action for malpractice alleged therein had prescribed.
The curatrix contends that the prescriptive period did not begin to run until sometime in April, 1982 when she learned she had a cause of action to have the separation of property agreement set aside.[11] She cites for authority the principle that the one year prescriptive period of La.C.C. 3536 commences to run from the date the injured party discovered or should have discovered the existence of facts that would enable him to bring suit. La.C.C. 3537; Cherokee Restaurant, Inc. v. Pierson, supra.
The curatrix' reliance on the above principle is misplaced. She was aware of the facts that enabled her to bring suit from the time they occurred. She was aware of all the facts regarding the marriage between plaintiff and her son by virtue of her own knowledge. She was advised of all the facts surrounding her appointment as curatrix, the tort settlement, and the matrimonial agreement by her attorney and Judge Norris and there is an abundance of evidence in the record which establishes these determinations. It was her rights under those facts that she allegedly did not know about. The ignorance of one's rights does not toll the running of prescription. Smith v. Tyson, 193 La. 571, 192 So. 61 (1939); Jackson v. Zito, 314 So.2d 401 (La.App. 1st Cir.1975); Wingate v. National Union Fire Ins. Co., supra. The one year prescription period began to run by at least December 4, 1981. The trial court correctly decided that defendant's third party demand had prescribed.
This assignment of error lacks merit.
Following the trial judge's determination that the alleged malpractice claim had prescribed the trial judge made the statement that appellant failed to prove malpractice. We agree with this conclusion but find it unnecessary to address it because of our agreement with the trial judge's determination on the prescription issue.

ATTORNEY'S FEES
The note which plaintiff sued on calls for 25% attorney's fees on the unpaid *543 balance if sued upon or placed in the hands of an attorney for collection. At the time the suit was filed $48,000.00 was owed on the note. Plaintiff claims the trial court erred in awarding only $1,000.00 in attorney's fees instead of $12,000.00. Plaintiff cites Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982) for the proposition that where the amount of attorney's fees is set in a note, the trial court cannot award a lesser amount unless the reasonableness of the attorney's fees provision is questioned at trial.
Leenerts Farms does not limit the trial court in its determination to reduce an excessive fee provided for in a note to a case where the issue was asserted by the defendant at trial. The Leenerts Farms case, which recognized that an attorney is prohibited from collecting a "clearly excessive fee" by the Code of Professional Responsibility, is authority for the trial court to inquire into the reasonableness of an attorney's fees provision in a note, whether or not the issue is raised by the opposing party, as a matter of public policy. This view is consistent with the "earned fee" concept announced in Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La. 1979).
The trial court is in the best position to determine what is a reasonable fee based upon the factors contained in DR 2-106 of the Code of Professional Responsibility.[12]McCarthy v. Louisiana Timeshare Venture, 426 So.2d 1342 (La.App. 4th Cir.1982). There is nothing in the instant record to suggest the trial court abused its discretion in setting attorney's fees at $1,000.00. Plaintiff is entitled to an increase in attorney's fees for legal services performed on appeal. There were a number of difficult legal questions involved. Plaintiff's attorney filed an exhaustive brief which required extensive research and he had to travel a substantial distance for oral argument. We find that $1,500.00 is a reasonable fee for the appellate work.

DECREE
The judgment of the trial court is amended to increase the attorney's fees awarded plaintiff to $2,500.00. As amended the judgment is AFFIRMED at appellant's cost.
NOTES
[1] (a) There are no children of the marriage between plaintiff and Thomas.

(b) Plaintiff had a legal preference for the appointment. See La.C.C.P. 4550.
[2] The settlement does not allocate any of the amounts paid to any specific item of damages. In particular there is no allocation for loss of future wages.
[3] The note contained an acceleration clause.
[4] C.C.P. Art. 927 provides in pertinent part:

The court cannot supply the objections of prescription and res judicata, which must be specifically pleaded...
[5] In relevant parts C.C. 1861 provides:

The law, however, will not release a person of full age, and who is under no incapacity, against the effect of his voluntary contracts, on account of such implied error or imposition, except in the two following cases:
1. In partition where there is a difference in the value of the portions to more than the amount of one-fourth to the prejudice of one or [of] the parties; ...
[6] Clyde Lain, II, attorney for the curatrix, testified the figure of $400,000.00 was used as the value of Thomas' lost wages claims in connection with some of the settlement negotiations with the tort feasor's insurers.
[7] C.C.P. 2329

Spouses may enter into a matrimonial agreement before or during marriage as to all matters that are not prohibited by public policy.
Spouses may enter into a matrimonial agreement that modifies or terminates a matrimonial regime during marriage only upon joint petition and a finding by the court that this serves their best interests and that they understand the governing principles and rules. They may, however, subject themselves to the legal regime by a matrimonial agreement at any time without court approval...
[8] While the curatrix contends that Judge Norris did not explain to her the ramifications of entering such an agreement on Thomas' behalf, the record does not support her contention. Every other witness testified that the judge went over the agreement with the parties concerned and explained its significance to them and the appellant stated she understood and approved the agreement.
[9] "... This matter was pretried before this division on February 11, 1983, at the request of the attorneys by telephone... At that time it was discussed what the posture of trial would be... It was related to the Court that all parties knew where they stood in this. It was the Court's position, the Court's suggestion to Mr. Nolen that Mr. Armstrong file his pleadings rather than have them just incorporated in a pre-trial statement, which was done by-on March the 7th, 1983, for the Third Party Demands. At which time they have now been answered this morning. Third party defendant stands ready for trial, and the court will take the matter up."
[10] We note that the curatrix is unable to avail herself of the extended period in which she could file the third party demand under La.C. C.P. 1067. That demand was filed more than ninety days after service of the main demand.
[11] The curatrix contends that she did not learn of her cause of action until she consulted her present attorney after Judge Fudickar allegedly questioned the validity of the agreement.
[12] DR2-106 lists the following eight factors to be considered in determining whether an attorney's fees are reasonable:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
(3) The fee customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
(5) The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with the client.
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
(8) Whether the fee is fixed or contingent.