524 So.2d 923 (1988)
Mildred NEWSOM, Appellee,
v.
Johnny R. BOOTHE and John Doe Insurance Company, Appellant.
No. 19,537-CA.
Court of Appeal of Louisiana, Second Circuit.
May 4, 1988.
Rehearing Denied May 26, 1988.
Sedric Banks, Monroe, for appellant.
Hudson, Potts & Bernstein by Robert M. Baldwin, Monroe, for appellee.
Before MARVIN, FRED W. JONES, Jr. and NORRIS, JJ.
*924 NORRIS, Judge.
This is a suit for legal malpractice in which the defendant attorney and his insurer appeal a partial summary judgment as to liability only, as well as a prior ruling that dismissed their exception of prescription. The appellants have argued:
(1) Prescription of one year should begin to run from the time the plaintiff learned the will was invalid rather than when the forced heirs actually challenged the will.
(2) Attorney fees may be assessed for relitigating issues that the defendant attorney allegedly mishandled, but not for litigating new issues.
By reply brief, the plaintiff has also argued:
(3) Prescription of ten years should apply to this case.
For the reasons expressed, we reverse.

FACTS
On March 10, 1983, Mrs. Newsom's husband executed a purported statutory will prepared by attorney Johnny Boothe. In the absence of a will, all of Mr. Newsom's property would have been inherited by his forced heirs, seven children of a prior marriage. The will, however, made substantial bequests to Mrs. Newsom. Mr. Newsom died on July 17, 1985. In late July or early August, Mr. Boothe discovered that he had directed Mr. Newsom to sign only the second page of the two-page will. This makes the will invalid. LSA-R.S. 9:2442(B)(1). Mr. Boothe told Mrs. Newsom about the defect and resultant invalidity at that time and told her he had malpractice insurance to cover her loss. He then offered to try to effect a settlement with the forced heirs, without charge.
On September 30, 1985, Mr. Boothe terminated his representation of Mrs. Newsom. She then consulted another attorney, Mr. Kramer, who advised her the will was invalid but nevertheless offered it for probate. On November 8, 1985, Mr. Newsom's forced heirs filed an opposition to the will. Judge Strong declared the will invalid by judgment signed on November 15, 1985.
Mrs. Newsom filed this suit against Mr. Boothe and his insurer on November 3, 1986, demanding the value of the legacy she lost. The defendants responded with an exception of prescription, urging that Mrs. Newsom knew of the will's defect in August 1985 and that prescription should have run from then, or that it should run at least from the time that Mr. Boothe ceased representing Mrs. Newsom, on September 30. The trial court dismissed the exception, reasoning that prescription could not commence until there was both a wrongful act and damage, and this occurred only on November 8, 1985, when the heirs filed their formal opposition. The lawsuit of November 3, 1986 was therefore timely.
Mrs. Newsom then moved to proceed in forma pauperis; the motion was granted on March 30, 1987. She then moved for summary judgment. The trial court granted partial summary judgment as to liability only. By judgment rendered in open court on April 27 (but not signed and filed until July 23) the court decreed that the defendants were liable for "any and all loss(es), damage(s) and/or injury(ies) including reasonable attorney's fees incurred in the prosecution of this lawsuit[.]"
Mrs. Newsom subsequently amended her petition to demand losses for mental depression, anxiety, emotional anguish, embarrassment and humiliation. She included a prayer for legal fees [1] necessary to "represent her interest in prosecuting this lawsuit." The trial court permitted this amendment on June 4, 1987.

DISCUSSION
The trial court concluded that prescription did not begin to run until November 8, 1985, when Mr. Newsom's forced heirs filed their formal opposition to the will. The court based its decision on Rayne State Bk. & Tr. Co. v. Nat `I Union Fire Ins., 483 So.2d 987 (La.1986). Appellants *925 contend Rayne State Bank is distinguishable from the instant case, and we agree.
In Louisiana prescription does not begin to run until damage is sustained. LSA-C. C. art. 3492. Unquestionably, as of March 1983, Mr. Boothe had a duty to provide competent legal services, and this duty encompassed the risk that the will might be defective. He breached that duty and damages ensued. The question is when did the plaintiff have enough notice to excite her attention and put her on guard to call for inquiry that would lead to information or knowledge. This activates the prescriptive period for the malpractice action. Cartwright v. Chrysler Corp., 255 La. 597, 232 So.2d 285 (La.1970).
In Rayne State Bank, supra, the plaintiff had extended loans totalling $3,000,000 to two construction companies. To secure the loans, the bank had mortgages affecting chattels prepared by the defendant attorney. The mortgage documents failed to state the location of the chattels, "a defect which might have under some circumstances rendered the mortgages invalid as to the chattels." 483 So.2d at 988. The bank was made aware of this defect in March 1980, but the validity of the mortgages was not actually contested until the mortgagors filed for bankruptcy, became debtors in possession, acquired the avoidance power of a trustee, and finally sought to invalidate the mortgages in January 1981. The plaintiff bank sustained losses because it could not assert a fully secured status, but the exact dimension of the loss was never judicially determined; the plaintiff settled with the debtors. Prior to the settlement the bank lodged a third party claim in bankruptcy court on April 28, 1981, against the attorney who had drafted the mortgages, and filed suit in state court on this claim in March 1982. The third party claim obviously came over a year after discovery of the defect, and the trial court sustained the attorney's exception of prescription. The supreme court reversed, holding the bank did not sustain any damage upon mere notice of the defects, but only from the time it knew the debtors in possession would seek to avoid the mortgages.
In the instant case the trial court applied essentially the same reasoning, holding that when Mr. Boothe advised Mrs. Newsom of the will's defect in late July or early August 1985, this was "mere notice" of a wrongful act and insufficient to activate prescription. The trial court analogized the heirs' opposition in the succession case to the debtors in possession's adversary proceedings in the bankruptcy case, concluding that in both cases damage was not certain and ascertainable until these formal acts were taken.
While we recognize the equities weighing heavily in Mrs. Newsom's favor, we are constrained to notice and apply the fundamental and almost glaring distinctions between this case and Rayne State Bank, and come to the conclusion that prescription began to run against Mrs. Newsom's action before November 8, 1985.
Perhaps the greatest distinction comes when we analyze the supreme court's qualification of the defect in Rayne State Bank. Failure to state the location of the chattels (LSA-R.S. 9:5352, prior to the 1981 amendments) was a defect which "might have under some circumstances rendered the mortgages invalid[.]" The same qualification cannot be conceivably applied to the defect in the instant will. This defect is fatal.
In Land v. Succ. of Newsom, 193 So.2d 411 (La.App. 2d Cir.1966), writ denied 250 La. 262, 195 So.2d 145 (1967), this court held that a statutory will, two pages in length and bearing the testator's signature on only the second page, is an absolute nullity. The rationale for this is not rigid compliance with R.S. 9:2442(B)(1), but to discourage the potential fraud of altering the unsigned portion of the will. Soileau v. Ortego, 189 La. 713, 180 So. 496 (1938); Howard v. Gunter, 215 So.2d 222 (La.App. 3d Cir. 1968); Casenote, 25 Loy.L.Rev. 362 (1968). On identical facts, the same conclusion was reached in Succ. of Hoyt, 303 So.2d 189 (La.App. 1st Cir.1974). This reasoning was recently approved by the supreme court in Succ. of Guezuraga, 512 So.2d 366 (La. 1987). In sum, there can be *926 little doubt but that Mr. Newsom's will was fatally defective, unlike the mortgages in Rayne State Bank. The jurisprudence is replete with cases holding that fatally defective wills are null and void. Succ. of Robertson, 49 La.Ann. 868, 21 So. 586 (1897); Succ. of Dyer, 155 La. 265, 99 So. 214 (1924); Succ. of Kron, 172 La. 666, 135 So. 19 (1931). The conclusion is inescapable that while the mortgages in Rayne State Bank were arguably valid and perhaps voidable, the will in this case was absolutely null and void.
Furthermore, the holder of a mortgage does not need a prior judicial declaration of the mortgage's validity in order to enforce it. By contrast, a will must be probated under strict procedures. LSA-C.C.P. art. 2887, 2890. The judge, applying the jurisprudence, would have been obligated to declare this will a nullity. It was simply a matter of time before the invalidity of the will was recognized. The plaintiff argues implicitly that prescription must be suspended until the heirs took some action to affect the will. However, the plaintiff herself was bound to offer the will for probate and the judge was bound to invalidate it, even without formal opposition from Mr. Newsom's forced heirs. LSA-C.C.P. art. 2853. Mrs. Newsom was therefore not at the mercy of the heirs to learn that the will was defective; the ruling was inevitable, regardless of the heirs' acts.
A final distinction lies in the characterization of a mortgage as an accessory contract. LSA-C.C. arts. 1913, 3284. When a mortgage contains formal defects, the creditor is not automatically placed on notice that he will sustain losses. He still holds a hand note or other evidence of the primary, underlying obligation, and is entitled to receive payment thereon. Until the mortgagor stops paying, or goes into bankruptcy and the validity of the security agreement is attacked, the creditor cannot be certain that he will sustain a loss. Such is simply not the case with a will, which stands alone, is not accessory to anything, and does not secure any underlying obligation. The will was the only legal means of transmitting Mr. Newsom's property to Mrs. Newsom. If it was invalid, the legatee had no other ground on which to demand the property. Her loss was certain and definite from the outset; the measure of damage was the value of the property bequeathed to her in the will. There is no way to conclude that a legatee can expect to receive under a will when the will is null.
For these reasons, we are constrained to disagree with the trial court and hold that Rayne State Bank, supra, is inapplicable to the instant case. The jurisprudence is too firm to allow speculation as to whether a defective will might be enforced. The will was null and void. Consequently Mr. Newsom's forced heirs received ownership of the property at the moment of his death, regardless of Mrs. Newsom's possession. Baten v. Taylor, 386 So.2d 333 (La.1979). Mrs. Newsom's losses were inevitable, certain and calculable as soon as she learned of the defect. At this point, in late July or early August, she knew that the loss was sure to result. This is when prescription began to run on her malpractice action. See Olivier v. Nat'l Union Fire Ins., 499 So.2d 1330 (La.App. 3d Cir.1986); Cartwright v. Chrysler Corp., supra.
The jurisprudence also recognizes, however, that prescription is suspended in a malpractice action as long as the attorney-client relationship is maintained. See Blanchard v. Reeves, 469 So.2d 1165 (La. App. 5th Cir.1985), writ denied 476 So.2d 347 (La.1985), and citations therein. This is based on a theory of contra non valentem and is applicable to the instant case. Prescription was therefore suspended until Mr. Boothe, by severing the professional relationship, allowed Mrs. Newsom to file suit against him. This occurred on September 30, 1985. The instant suit was filed on November 3, 1986.
The final issue is therefore which prescriptive period to apply. Appellants argue the trial court properly applied one-year prescription under LSA-C.C. art. 3492. Plaintiff suggests that her suit was really a personal action and should survive for ten years. LSA-C.C. art. 3499.
An action for legal malpractice normally sounds in tort and prescribes in *927 one year. See Gifford v. New England Reins. Corp., 488 So.2d 736 (La.App. 2d Cir.1986), and citations therein; Rayne State Bank, supra. An exception obtains, and ten-year prescription applies, when an attorney warrants a specific result and fails to obtain it, or agrees to do certain work and does nothing whatsoever. Knighten v. Knighten, 447 So.2d 534 (La. App. 2d Cir.1984), writ denied 448 So.2d 1303 (La.1984); Cherokee Rest. v. Pierson, 428 So.2d 995 (La.App. 1st Cir.1983); Elzy v. ABC Ins. Co., 472 So.2d 205 (La.App. 4th Cir.1985), writ denied 475 So.2d 361 (La. 1985). In the instant case there is no evidence of a specific warranty offered by Mr. Boothe, such as would activate the ten-year prescriptive period. Mr. Boothe apparently represented to Mr. and Mrs. Newsom that the statutory will would effectuate his testamentary wishes, but an implied duty of legal competence is present in every attorney-client relationship and is not sufficient, without evidence of a warranty to achieve a specified result, to activate the contractual prescription. Varnado v. Ins. Corp. of Amer., 484 So.2d 813 (La.App. 1st Cir. 1986), writ denied 489 So.2d 248 (La.1986). Rather, the allegation is that Mr. Boothe breached his duty of skill, care and diligence; this sounds in tort, not contract, and the action prescribes in one year, not ten. Gifford v. New England Reins. Corp., supra.
Plaintiff further argues that a second exception is recognized when the injured party is not the attorney's client but is the beneficiary of the attorney's work under a stipulation pour autrui, as provided under LSA-C.C. art. 1890. Woodfork v. Sanders, 248 So.2d 419 (La.App. 4th Cir. 1971), writ denied 259 La. 759, 252 So.2d 455 (1971); Weintz v. Kramer, 44 La.Ann. 35, 10 So. 416 (1892). The issue in these cases is not prescription, but rather the disappointed legatee's cause of action. Before courts recognized legal malpractice as tortious, the claims of disappointed legatees had to be justified under contract theory. More recent jurisprudence, outlined in Gifford v. New England Reins. Corp., supra, treats the attorney's act as a tort and extends a cause of action to anyone who is injured by it. We therefore decline to adopt the reasoning of these early cases which predate the tort theory of legal malpractice and do not address the issue of prescription. We would note parenthetically the inequity of confining the attorney's client to one-year prescription while allowing a third-party beneficiary ten. The trial court was not in error to impose the one-year prescriptive period.
For the reasons expressed, we conclude the trial court was in error to deny the defendants' exception of prescription. Under applicable jurisprudence, prescription began to run on September 30, 1985, and the instant lawsuit of November 3, 1986, was not timely. The judgment is reversed and the case dismissed. Because of this disposition, we do not need to discuss the issue of attorney fees. Costs of this appeal are assessed to appellee, Mrs. Newsom.
REVERSED.

ON APPLICATION FOR REHEARING
Before MARVIN, JASPER E. JONES, FRED W. JONES, SEXTON and NORRIS, JJ.
Rehearing denied.
NOTES
[1] She prayed for legal fees at the stated rate of $125./hour or one-third of her total award, whichever is greater.