LINDSAY, Judge.
In this suit for legal malpractice, the trial court sustained a plea of one-year prescription raised by one of the defendants, Henry G. Hobbs. The plaintiff, Richard C. Baker, appealed. We affirm the judgment of the trial court.
FACTS
The underlying facts leading to the institution of this suit are set forth in detail in Succession of Baker, 480 So.2d 890 (La. *932 App. 2d Cir.1985), writ denied 484 So.2d 669 (La.1986). In 1976, John T. Campbell, a co-defendant in the present litigation, prepared a trust instrument for Pearl Baker, the plaintiff’s stepmother. This document created the Pearl Baker Trust, the corpus of which consisted of certain stock. The stock was delivered to the trustees of the trust, the income from which was payable to Mrs. Baker as the income beneficiary. The trust document provided that upon Mrs. Baker’s death the corpus of the trust would be delivered to the principal beneficiaries, the trusts for her late husband’s two sons, Richard and Claude, Jr. It also contained a paragraph that indicated that since the trust instrument disposed of property, it was meant to be a will or testament.
Mrs. Baker’s will was executed while her husband was still alive. The will left all of her community property to him. Following her husband’s death, Mrs. Baker’s will was modified by several testamentary codicils. Mr. Hobbs is an attorney who prepared the fourth, fifth and sixth codicils for Mrs. Baker. In her first codicil, she bequeathed her community property in equal shares to trusts for Richard and Claude, Jr. In her fifth codicil, she eliminated the bequest to the trust for Claude, Jr., in favor of the trust for Richard.
After Mrs. Baker’s death in 1984, a question arose as to ownership of the stock from the Pearl Baker Trust. Richard Baker contended that the Pearl Baker Trust was a mortis causa disposition of property and that the fifth codicil revoked the bequest to the trust for Claude, Jr., thus leaving all the stock to Richard Baker. On the other hand, Claude, Jr., contended that the Pearl Baker Trust was an inter vivos trust, which was not affected by the fifth codicil. (It is the interaction between the trust instrument and the codicil which ultimately led to the present malpractice suit.)
A subsequent suit for declaratory judgment by Richard Baker was decided adversely to his interest. The trial court found the Pearl Baker Trust was an inter vivos trust which was not revoked by the fifth codicil. Consequently, the stock was property of the trust which was to be distributed in accordance with the terms of the trust instrument. The fifth codicil was deemed to have no effect on the stock. Thus, the trust for Claude, Jr., was entitled to one-half of the proceeds from the stock sale. The trial court’s written decision was rendered on February 22, 1985. On December 4,1985, this court affirmed. Thereafter, Richard consulted another attorney, Dewey J. “Bo” Smith, about preparing a writ application to the Louisiana Supreme Court. This application was filed by Mr. Smith on February 12, 1986, and denied by the Louisiana Supreme Court on March 21, 1986.
On March 20, 1987, Richard Baker filed this suit for legal malpractice against Mr. Hobbs and Mr. Campbell, who prepared the trust instrument. Richard Baker contended that their alleged legal malpractice resulted in the loss of a substantial legacy to him and caused him great mental anguish. As to Mr. Hobbs, the plaintiff specifically alleged that he was negligent in preparing Mrs. Baker’s codicils and in handling her succession on the plaintiff’s behalf. In response to the suit, Mr. Campbell filed an exception of prescription, which was denied in July, 1987.[1]
On November 2, 1988, Mr. Hobbs also filed an exception of prescription. An evi-dentiary hearing was held on February 20, 1990, at which Richard Baker, Mr. Smith, and Mr. Hobbs testified. The testimony reflected that Richard Baker hired Mr. Smith because he was dissatisfied with the information he was receiving from Mr. Hobbs. His first meeting with Mr. Smith was on or about December 31, 1985. Mr. Smith testified that his next contact with Richard Baker was on or about February 2, 1986, at which time he was hired to handle the writ application.
Following the hearing, the trial court sustained Mr. Hobb’s exception of one-year prescription. It relied upon Newsom v. Boothe, 524 So.2d 923 (La.App. 2d Cir. *933 1988), writ denied 531 So.2d 479 (La.1988), to find that prescription began to run when the plaintiff became aware of the alleged negligent acts of the attorney and of the fact that he would sustain damage as a result. The court found that the plaintiff knew of the alleged negligent acts when the trial court ruled against him on February 22, 1985. It further noted that in January, 1986, the plaintiff secured other counsel and that Mr. Hobbs ceased to represent him. Therefore, the court found that the one-year prescriptive period had elapsed before suit was filed on March 20, 1987.
This appeal followed. (On February 14, 1990, the trustee in Richard Baker’s bankruptcy proceedings was entered as a party plaintiff in the instant case to the extent of the estate’s interest.) Plaintiff argues that prescription did not begin to run until the judgment classifying the legacy became final. In brief, he further contended that a ten-year prescriptive period was appropriate for a suit brought on a lost legacy. However, at oral argument, counsel for appellant conceded that the one-year period was applicable, asserting that the case presented only the issue of when the prescriptive period commenced to run.
LAW
A claim for legal malpractice is a delictual action subject to the one-year prescriptive period found in LSA-C.C. Art. 3492. Braud v. New England Insurance Company, 576 So.2d 466 (La.1991); Rayne State Bank & Trust Company v. National Union Fire Insurance Company, 483 So.2d 987 (La.1986); Cherokee Restaurant, Inc. v. Pierson, 428 So.2d 995 (La.App. 1st Cir.1983), writ denied 431 So.2d 773 (La.1983); Gifford v. New England Reinsurance Corporation, 488 So.2d 736 (La.App. 2d Cir.1986); Newsom v. Boothe, supra; Norwood v. Fish, 537 So.2d 783 (La.App. 2d Cir.1989), writ denied 539 So.2d 634 (La.1989); McCray v. New England Insurance Company, 579 So.2d 1156 (La.App. 2d Cir.1991). It is only where the attorney expressly warrants a specific result and fails to obtain that result, or agrees to perform certain work and does nothing whatsoever, that the cause of action is in contract and subject to the 10-year prescriptive period provided for in LSA-C.C. Art. 3499. Cherokee Restaurant, Inc., supra; Gifford, supra.
Prescription begins to run when damage is sustained. LSA-C.C. Art. 3492; Braud, supra; Newsom, supra. Mere notice of a wrongful act will not suffice to commence prescription. The plaintiff must be able to state a cause of action — both a wrongful act and resultant damages. Rayne State Bank & Trust Company, supra. However, the cause of action arises before the client sustains all, or even the greater part, of the damages occasioned by his attorney’s negligence. Any appreciable and actual harm flowing from the attorney’s negligent conduct establishes a cause of action for legal malpractice. Braud, supra.
However, prescription is suspended in a malpractice action as long as the attorney continues to represent the client regarding the specific subject matter in which the alleged wrongful act or omission occurred. Braud, supra; Newsom, supra.
DISCUSSION
The relevant dates in connection with this case are as follows:
September 18, 1984 Declaratory action filed by Mr. Hobbs on behalf of Richard Baker.
February 22, 1985 Decision by District Court adverse to Richard Baker.
December 4, 1985 Decision of District Court affirmed by Second Circuit Court of Appeal.
December 31, 1985 First meeting between Richard Baker and attorney Dewey J. “Bo” Smith.
February 2, 1986 Richard Baker hires Mr. Smith to file writ application.
February 12, 1986 Mr. Smith files application for writs of certiorari to Supreme Court on behalf of Richard Baker.
March 21, 1986 Writs denied by Supreme Court.
*934 March 20, 1987 Suit for legal malpractice filed by Richard Baker.
Our review of the record demonstrates the plaintiff suffered “appreciable and actual harm” as the result of Mr. Hobbs’ alleged legal malpractice when the plaintiff had to engage the services of another attorney to prepare his writ application and, as a consequence, incurred legal fees. Richard Baker paid Mr. Smith for the consultation of December 31, 1985. He also paid Mr. Smith for the work performed after Mr. Smith was hired on or about February 2, 1986.
Prescription was suspended while Mr. Hobbs continued to represent the plaintiff in the declaratory judgment suit. Although Richard Baker testified that he had never fired Mr. Hobbs, it is obvious that Mr. Hobbs ceased to represent Richard Baker in the declaratory judgment action after Mr. Smith was hired to prepare the writ application. Mr. Hobbs testified that he ceased all work on the case after receiving confirmation from Mr. Smith’s office that they were filing a writ application on Richard Baker’s behalf “that day.” Mr. Smith’s records indicated that his office mailed the writ application on February 10, 1986. It was received by the Louisiana Supreme Court on February 12, 1986.
Therefore, we find that the one-year prescriptive period began to run no later than February 12, 1986, when Mr. Smith, as plaintiff's new counsel, filed his writ application with the Louisiana Supreme Court. Thus, the one-year prescriptive period had run by the time this malpractice suit was filed on March 20, 1987.
CONCLUSION
The judgment of the trial court sustaining Mr. Hobb’s exception of prescription is affirmed. Costs are assessed against the plaintiff.
AFFIRMED.

. No appeal was taken from the denial of Mr. Campbell's exception of prescription. Consequently, that matter is not before this court for decision.