435 So.2d 594 (1983)
Rodney J. WINGATE, Jr., et al., Plaintiffs-Appellants,
v.
NATIONAL UNION FIRE INSURANCE COMPANY, American Home Assurance Company, Nolan J. Edwards and Larry Dupuis, Defendants-Appellees.
No. 83-13.
Court of Appeal of Louisiana, Third Circuit.
June 29, 1983.
Rehearings Denied August 17, 1983.
Writ Denied November 4, 1983.
*595 S. Michael Cashio, Kenner, for plaintiffs-appellants.
Lloyd W. Hayes and Thomas O'Brien, of Adams & Reese, New Orleans, for defendants-appellees.
Before FORET, CUTRER and LABORDE, JJ.
CUTRER, Judge.
The sole issue presented on this appeal is whether a malpractice action against attorneys has prescribed.
Rodney J. Wingate, Jr., filed a malpractice action against Nolan J. Edwards, Larry C. Dupuis, the law firm of Edwards, Stefanski & Baroussee and their insurers.
After a consolidated hearing on the defendants' exception of prescription, plaintiff's motions for summary judgment and declaratory judgment and certain motions in limine[1] the trial court granted the defendants' exception of prescription and dismissed plaintiff's case. Plaintiff appealed. We reverse and remand.
The trial judge, in well reasoned and convincing written reasons for judgment, followed the recent case of Sciacca v. Polizzi, 403 So.2d 728 (La.1981), and held that plaintiff's suit had prescribed as it had not been filed within one year.
The Sciacca case was a malpractice claim against a physician. There was a split among the circuit courts of appeal. The Supreme Court resolved the split in Sciacca as follows:

"There is a split among the circuits of this jurisdiction on the issue of the applicable prescriptive period in medical malpractice suits. The Fourth Circuit indicated in Creighton v. Karlin, 225 So.2d 288 ([La.App.] 4th Cir.1969), writ den., 254 La. 842, 227 So.2d 590 (1969), that an express warranty of result was not required for an action in contract. Again, the First Circuit also subscribes to this view. The Second and Third Circuits follow the Phelps rule that a medical malpractice action is delictual in nature unless the physician warrants or promises a particular result.....

"We hold that the better view is the one adopted in Phelps v. Donaldson, [243 La. 1118, 150 So.2d 35 (La.1963)], and we continue to ascribe to that view. The appellate cases to the contrary are expressly overruled. Unlike engineers, mechanics and shipbuilders, a physician does not, simply by undertaking the treatment of a case, contract with the patient for a specific result. When a patient is injured by the negligence of his physician, his action against that physician is one in tort, unless the physician has contracted with the patient for a specific cure or result. The action is essentially one for injuries caused by negligence, and the statute of limitations governing the negligence actions is the applicable statute regardless of the form of action by which liability is sought to be enforced....."

(Citations omitted.)
By analogy, the trial judge in the instant case applied the holding of Sciacca. The trial court felt that Sciacca had the effect of overruling the prior holdings of this court in the cases of Ambrose v. Roberts, 393 So.2d 132 (La.App. 3rd Cir.1980), writ den., 394 So.2d 1234 (La.1980), and Johnson v. Daye, 363 So.2d 940 (La.App. 3rd Cir.1978). These cases hold that a malpractice action against an attorney may state a claim both ex delicto and ex contractu. This is true even though the petition be couched in language asserting a claim based upon the negligence of the attorney. The plaintiff's petition in this case alleges as follows:

"Petitioners contacted the law firm of EDWARDS, STEFANSKI and BAROUSSE, and more particularly, NOLAN *596 J. EDWARDS and LARRY C. DUPUIS of that firm, on or about October 6, 1977. Petitioners entered into an agreement with the above named parties on that date to pursue any and all claims flowing out of or related to his injury of October 2, 1977, as above detailed. That due to inattention, miscalculation or neglect, the law firm of EDWARDS, STEFANSKI and BAROUSSE, especially NOLAN J. EDWARDS and LARRY C. DUPUIS, have failed to file any claims, suits or legal actions, in any courts of competent jurisdiction on behalf of petitioner which were due to his accident of October 2, 1977."

We, with some reluctance, must disagree with the trial court's conclusion that Sciacca has overruled the established position of this court.[2] We note that writs have been denied by the Supreme Court in Ambrose, our most recent case (1980). In respect to the application of prescription, we find no indication that attorneys are to be placed in the same position as physicians. The Legislature has enacted special legislation pertaining to prescription of malpractice actions against physicians.[3] No such legislation has been enacted as to suits against attorneys. Under these circumstances, we feel that we must adhere to our rulings in Ambrose and Johnson.
In the instant suit, the accident occurred on October 2, 1977. On October 2, 1978, any claims against third parties as a result of the accident would have prescribed. The instant suit was filed on November 23, 1981, more than three years after prescription for a malpractice action had begun to run. The plaintiff's tort action against defendants had clearly prescribed. LSA-C.C. art. 3536.
However, a malpractice action against an attorney may state a claim both in tort and contract. In this case, an action in contract remains viable as this type of claim is prescribed in ten years under LSA-C.C. art. 3544.
The plaintiff contends that, since he did not learn until March 1981, that his attorneys failed to file suit, the one year tort prescription was suspended until that time. This contention is without merit.
The issue presented is whether the doctrine of "contra non valentem agere nulla currit praescriptio" (no prescription runs against a person unable to bring an action) can be utilized by the plaintiff to suspend the running of prescription during the time the plaintiff was ignorant of his right to sue defendants for legal malpractice.
This issue was fully answered by the court in the case of Martin v. Mud Supply Company, 239 La. 616, 119 So.2d 484 (La. 1960), wherein the court stated:
"... Statutes of limitation are founded on public policy and are favored in the law. Mere ignorance of one's rights will not toll the statute of limitations. Concealment by defendant only by silence is not enough. He must be guilty of some trick or contrivance tending to exclude suspicion and prevent inquiry. There must be reasonable diligence on the part of plaintiff and the means of knowledge are the same in effect as knowledge itself. * * * We know of no decision, either of controlling authority or persuasive, holding that mere ignorance on the part of the creditor will toll the statute."
There is no allegation or showing of fraud or concealment by the defendant attorneys. Under these circumstances plaintiff's lack of knowledge does not suspend the running of prescription.
*597 We conclude the plaintiff's ex delicto claim against defendants has prescribed but the action ex contractu has not prescribed. Thus, plaintiff may proceed on the basis of contract. We express no opinion on the merits of the litigation.
For these reasons, the judgment of the trial court, dismissing plaintiff's suit is reversed and the case is remanded for further proceedings according to law and the views expressed herein. Costs of this appeal are to be paid by defendants-appellees.
REVERSED AND REMANDED.
NOTES
[1] The trial court overruled plaintiff's motions. These are interlocutory and not subject to appeal. We shall confine this opinion to the subject of prescription.
[2] We note that the Court of Appeal, First Circuit has very recently followed Sciacca by analogy and applied it to malpractice actions against attorneys. See Cherokee Restaurant, Inc. v. Pierson, 428 So.2d 995 (La.App. 1st Cir.1983), writs den., April 15, 1983, 431 So.2d 773 (La.1983). In doing so, that court overruled its previous cases of Jackson v. Zito, 314 So.2d 401 (La.App. 1st Cir.1975), writs den., 320 So.2d 551 (La.1975), and its progeny. We respectfully disagree with the holding in Cherokee.
[3] See: LSA-R.S. 9:5628.