469 So.2d 409 (1985)
RAYNE STATE BANK & TRUST COMPANY, Plaintiff-Appellant,
v.
NATIONAL UNION FIRE INSURANCE COMPANY, et al., Defendants-Appellees.
No. 84-370.
Court of Appeal of Louisiana, Third Circuit.
May 15, 1985.
*410 Reggie, Harrington and Boswell, Oscar W. Boswell, III, Crowley, and Chappuis and Beslin, Charles W. Chappuis, Rayne, for plaintiff-appellant.
Voorhies and Labbe, John W. Hutchison, Lafayette, Edwards, Stefanski and Barousse, Homer E. Barousse, Jr., Crowley, Christovich and Kearney, J. Walter Ward, Jr., New Orleans, Dubuisson and Dubuisson, Edward B. Dubuisson, Opelousas, for defendants-appellees.
Before DOMENGEAUX, DOUCET and YELVERTON, JJ.
DOMENGEAUX, Judge.
Plaintiff-appellant Rayne State Bank & Trust Company filed this lawsuit against Noble M. Chambers, Jr., the law firm of Aaron, Aaron & Chambers, Edward Heller, the law firm of Bronfin, Heller, Feldman, and Steinburg, and the parties' professional liability insurer, National Union Fire Insurance Company, seeking damages for alleged legal malpractice perpetrated by some of the defendants. The plaintiff appeals the district court's judgment maintaining the defendants' exceptions of prescription.

FACTS
On January 22, 1979, Rimmer and Garrett, Inc., and Tobilar, Inc., general road *411 construction contracting companies,[1] transacted two loans with the plaintiff bank. Tobilar, Inc. borrowed $2,000,000.00 and Rimmer and Garrett, Inc. borrowed $1,000,000.00.
Rimmer and Garrett, Inc. and Tobilar, Inc. hired an attorney, Mr. Noble Chambers (with the law firm of Aaron, Aaron & Chambers) to prepare two mortgages to secure the loans made from Rayne State Bank. Each mortgage was titled "Special Mortgage with Chattel" and included immovable property as well as certain described chattels. One of the mortgages with chattel was executed by Tobilar, Inc. in the sum of $2,000,000.00 and the other by Rimmer and Garrett in the sum of $1,000,000.00. Both mortgages were executed in favor of Rayne State Bank and were recorded on January 22, 1979.
It was later discovered that the mortgages were defective as they related to the chattels contained therein because the mortgages did not recite the location where the chattels could be found as then required by La.R.S. 9:5351.
Subsequent to the preparation and recordation of the mortgages, Mr. Chambers issued opinion letters to the bank bearing upon property affected by the mortgages.
Shortly after Rayne State Bank made the loans to Rimmer and Garrett and Tobilar those companies ceased payment on their indebtedness. An informal investigation by the banking community of the financial situation of Rimmer and Garrett and Tobilar indicated to Rayne State Bank that those companies were experiencing financial difficulties. In light of these circumstances, Mr. U.J. Prevost, President of Rayne State Bank, sought the advice of Mr. Edward Heller, a partner in the law firm of Bronfin, Heller, Feldman & Steinburg, in connection with an examination of the validity of the collateral securing the loans to Rimmer and Garrett and Tobilar. Heller and Prevost testified that this meeting took place in March, 1980.
Both Mr. Heller and Mr. Prevost agree that certain minor defects in the corporate resolutions accompanying the mortgages was discussed. There is conflict, however, as to whether Mr. Heller informed Mr. Prevost that the mortgages were fatally defective because they did not state the location of the chattels. Heller testified that he informed Prevost of the defect and that they discussed alternative corrective measures including the risk of informing the debtors that the chattel mortgages were invalid by asking them to correct the mortgages. Prevost testified that Heller did not mention the failure of the mortgages to state the location of the chattels.
After meeting with Mr. Heller, Mr. Prevost made arrangements for Mr. Noble Chambers to contact Mr. Heller in order to correct the bank's security devices. Mr. Chambers and Mr. Prevost both testified that during their conversation nothing was mentioned concerning the mortgages' failure to state the location of the chattels. Mr. Heller gave testimony that he did not mention the fatal defect to Mr. Chambers during their phone conference. After speaking with Mr. Heller, Mr. Chambers made and recorded certain corrections, but the corrections did not relate to the mortgages' failure to state the location of the chattels.
In November 1980, the principals of Rimmer and Garrett and Tobilar appeared at the bank with counsel, and informed the bank that the chattel mortgages were defective and threatened to file bankruptcy and seek the invalidation of the mortgages in the bankruptcy court unless the bank agreed to loan them an additional $150,000.00. Rayne State Bank refused to grant an additional loan to Rimmer and Garrett and Tobilar, and in January, 1981, instituted executory proceedings to foreclose its mortgages against both corporations.
*412 Rimmer and Garrett, Inc. and Tobilar, Inc. filed for relief under Chapter 11 of the Bankruptcy Code on January 20, 1981, and shortly thereafter a complaint was filed against the bank praying that the mortgages on the chattels be set aside due to lack of statutory compliance.
On April 28, 1981, Rayne State Bank filed third party demands in the Federal Bankruptcy Court against Mr. Heller, his law firm, Mr. Chambers, his law firm, and National Union Fire Insurance Company.
In October of 1981 Rayne State Bank settled the claims made against it by Rimmer and Garrett and Tobilar which had been filed in the bankruptcy proceedings.
On March 24, 1982, the present action was filed. The plaintiff's petition alleges that Noble M. Chambers, Jr. and/or other members of the law firm of Aaron, Aaron & Chambers committed legal malpractice because the mortgages which they prepared "did fail to state the location of the mortgaged [movable] property as required by La.R.S. 9:5351, and were as a consequence, invalid as to the movable property involved."
The petition further avered that at the time of Edward Heller's review of the plaintiff's security devices he failed to call to the attention of Rayne State Bank the deficiencies in the mortgages and thus he and his law firm, Bronfin, Heller, Feldman & Steinburg, are liable to the plaintiff for legal malpractice.
All of the defendants responded to the plaintiff's accusations by filing answers and peremptory exceptions of prescription. The case proceeded to trial where the district judge made the factual determination that at the March 1980 meeting Edward Heller informed U.J. Prevost that the mortgages were defective due to the failure of the mortgages to state the location of the movable property. The district court judge concluded that the exception of prescription filed by each defendant should be granted in view of its finding that:
"Rayne State Bank was put on notice of the defects in the chattel mortgages during the meeting held in New Orleans between U.J. Prevost and Edward Heller. Since the court finds that this claim is based solely in tort, a one year prescriptive period is applicable. The facts show that more than one year passed between March of 1980, the time in which Rayne State Bank learned of the defects in the mortgages, and the date of April 28, 1981, the time in which Rayne State Bank third-partied the defendants into bankruptcy court."
Rayne State Bank then petitioned the court for a new trial. After a hearing, the district judge denied the motion for a new trial.
The plaintiff-appellant appeals the decision of the district court. This appeal presents four issues for our determination:
(1) Was the trial court correct in finding that during the March 1980 meeting Mr. Edward Heller informed Mr. U.J. Prevost that the mortgages were defective for failure to state the location of the chattels?
(2) What prescriptive period is applicable to actions against attorneys at law for legal malpractice?
(3) When did prescription commence to run on the claims asserted in this case?
(4) Should we find that the trial court was correct in its factual finding on the Heller-Prevost meeting, and its application of one year prescription to the claim against Mr. Chambers, is Mr. Heller liable in malpractice for "failure to advise the bank that prescription had begun to run and that the bank's claim against Mr. Chambers would prescribe if it followed Mr. Heller's advice to maintain secrecy about the defective mortgages?"

ISSUE ONE
The appellant contends that the trial court erred in determining that at the March 1980 meeting between Edward Heller and U.J. Prevost, Heller informed Prevost that the mortgages were invalid as they related to the chattels because of the *413 mortgages' failure to recite the location of the chattels.
Conflicting testimony was presented at trial as to the substance of that meeting. Mr. Heller stated that he told Mr. Prevost that the mortgages were defective because they failed to state the location of the chattels. Mr. Prevost testified that Mr. Heller did not inform him of the fatal defects in the mortgage.
Rayne State Bank avers that Mr. Prevost's account of the meeting with Mr. Heller is the correct one. It argues that: "[i]n deciding the weight that should be accorded conflicting testimony, the court may validly consider that Mr. Heller is a party defendant, and has a personal interest in the outcome of this litigation, which Mr. Prevost (though an officer of the plaintiff) does not have."
We do not believe that the appellant's argument is entirely correct. Granted, Mr. Heller has a grave personal stake in the outcome of this litigation and therefore his veracity is at issue. However, Mr. Prevost as the President of the plaintiff bank likewise has an interest in the outcome of this litigation.
Before its repeal on January 1, 1985, Louisiana Civil Code Article 2282 provided:
"The circumstance of the witness being a relation, a party to the cause, interested in the result of the suit, or in the actual service or salary of one of the parties, is not a sufficient cause to consider the witness as incompetent, but may, according to circumstances, diminish the extent of his credibility."
Certainly under the circumstances present in this case, the fact that Mr. Prevost is in the service or salary of Rayne State Bank would have an effect upon his credibility as a witness.
This issue presents us with a garden variety evidentiary dilemma: Two competing interested parties who were the only eye witnesses of the event whose version of the facts are in conflict. Such a situation was envisioned by our Supreme Court when it held in Canter v. Koehring, 283 So.2d 716 (La.1973): "The reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." The district court judge observed the demeanor of both Mr. Heller and Mr. Prevost as they testified. He obviously concluded that Mr. Heller's version of the discussion which transpired at the March 1980 meeting was the true chronicle of the event. We can say, after reviewing the record as a whole that the factual determination of the trial court is not clearly wrong (manifestly erroneous). Arceneaux v. Domingue, 365 So.2d 1330 (La.1979).
Applying the proper standard of appellate review, we therefore conclude that at the March 1980 meeting Mr. Heller informed Mr. Prevost that the mortgages were defective and invalid because they did not recite the location of the chattels.
Having determined that Mr. Heller's version of the meeting was correct, the district court should have dismissed the case against him rather than having sustained his exception of prescription because it negated his liability. We therefore hold that whereas Mr. Heller informed Prevost of the defective mortgages, the plaintiff's legal malpractice suit against Mr. Heller and his law firm on those grounds are dismissed. Other allegations of Mr. Heller's malpractice shall be discussed infra.

ISSUE TWO
Inasmuch as we have determined that Mr. Heller informed Rayne State Bank of the defects in the chattel mortgages and is therefore not culpable, the question evolves into what prescriptive period applies to the plaintiff's legal malpractice claim against Mr. Chambers and his law firm.
The appellant contends that Mr. Chambers or a member of his law firm, Aaron, Aaron & Chambers, prepared defective *414 chattel mortgages because those mortgages did not state the location of the chattels as then required by La.R.S. 9:5351. As a result of the defect in the mortgages Rayne State Bank lost those chattels as security for the loans it made to Rimmer and Garrett and Tobilar. The plaintiff's petition bases its malpractice action upon the defendant Chambers' preparation of the defective mortgages. The district judge ruled that the plaintiff's case against Mr. Chambers and his law firm was based "solely in tort" (we presume for the negligent drafting of the mortgages) and therefore a one year prescriptive period applied.
On appeal, plaintiff-appellant avers that Mr. Chambers issued opinion letters to the bank certifying to the bank that the mortgages affected both the real estate described in them and the chattels included therein. The appellant maintains that these opinion letters amounted to a warranty by Mr. Chambers on behalf of Rayne State Bank that the mortgages as they affected the chattels were valid. The appellant cites Cherokee Restaurant, Inc. v. Pierson, 428 So.2d 995 (La.App. 1st Cir. 1983) for the proposition that "`When an attorney ... warrants the ultimate legal effect of his work product ... the ten year prescriptive period ... would apply.'" The crux of this argument appears to be that this legal malpractice case is a contract suit and therefore the ten year prescriptive period for contracts should govern.
The Louisiana Courts of Appeal are in conflict over the issue of whether a legal malpractice case is governed by the one year tort prescriptive period or the ten year contract prescriptive period.
The Third Circuit has consistently held that a "malpractice action against an attorney may state a claim both ex delicto and ex contractu. This is true even though the petition be couched in language asserting a claim based upon the negligence of the attorney." Wingate v. National Union Fire Insurance Company, 435 So.2d 594 (La.App.3rd Cir.1983), writ denied, 440 So.2d 762 (1983); Ambrose v. Roberts, 393 So.2d 132 (La.App. 3rd Cir.1980), writ denied, 394 So.2d 1234 (La.1980); and Johnson v. Daye, 363 So.2d 940 (La.App. 3rd Cir.1978). This reasoning leads to the practical result of a ten year prescriptive period for legal malpractice cases under La.C.C. Art. 3544[2] as Wingate, Ambrose, and Johnson each allowed the plaintiff a ten year prescriptive period within which to bring his damage claim.
The Louisiana First, Second, and Fourth Circuit Courts of Appeal have recently adopted the position that a legal malpractice claim is either a tort action with the applicable one year prescriptive period or a contract action governed by a ten year prescriptive period. See Cherokee Restaurant, Inc. v. Pierson, supra; Sturm v. Zelden & Zelden, 445 So.2d 32 (La.App. 4th Cir.1984); and Knighten v. Knighten, 447 So.2d 534 (La.App. 2nd Cir.1984).
The leading case cited for those Circuits' viewpoint is Cherokee Restaurant, Inc. v. Pierson, supra. In Cherokee Restaurant the Louisiana First Circuit Court of Appeal drew upon the rationale of Sciacca v. Polizzi, 403 So.2d 728 (La.1981), a medical malpractice case, to hold that a malpractice action against an attorney which is based upon negligence will normally be subject to the one year tort prescriptive period. But that:
"[W]hen an attorney expressly warrants a particular result, i.e., guarantees winning a lawsuit, guarantees title to property, guarantees or warrants the ultimate legal effect of his work product, or agrees to perform certain work and does nothing whatsoever, then clearly there would be an action in contract and the ten year prescriptive period of La.Civ. Code art. 3544 would apply."
After considerable analysis and contemplation we adopt the holding of Cherokee *415 Restaurant, Inc. v. Pierson, supra. We realize that our decision to adopt the holding of Cherokee Restaurant, is inconsistent with this Court's holding in Wingate v. National Union Fire Insurance Company, supra, however, we are convinced that the reasoning and holding of Cherokee Restaurant is the better and more modern method of determining whether a legal malpractice case sounds in tort or contract and which prescriptive period should apply.
We are particularly persuaded that the Cherokee Restaurant rationale is the better view in light of the fact that legal malpractice has traditionally been treated as an action ex delicto. Note, Legal malpractice: a tort or contract prescriptive period? Cherokee Restaurant v. Pierson, 44 La.L.Rev. 1495 (1984), and Corceller v. Brooks, 347 So.2d 274 (La.App. 4th Cir. 1977).
The defendant Mr. Chambers and/or a member of his law firm allegedly prepared a defective chattel mortgage because the mortgage failed to state the location of the chattels as was then required by La.R.S. 9:5351. "An attorney is obligated to exercise at least that degree of care, skill, and diligence which is exercised by prudent practicing attorneys in his locality." Ramp v. St. Paul Fire & Marine Insurance Company, 263 La. 774, 269 So.2d 239 (1972). Preparation of a defective mortgage due to a failure to make the mortgage comply with the statutory requirements prescribed by law would be a breach of the attorney's duty to his client. Such a breach would constitute negligent behavior which is governed by the one year tort prescriptive period in La.C.C. Art. 3536.[3]
Appellant argues that two opinion letters (plaintiff's exhibits 4 and 6) issued to it by Mr. Noble M. Chambers certified that the mortgages affected both the real estate described therein and the list of chattels. It contends that the title opinion letters were an express warranty of Noble Chambers' work and therefore under Cherokee Restaurant v. Pierson this suit should be governed by the ten year contract prescriptive period found in La.C.C. Art. 3544.
We do not agree with the plaintiff's contention that the title opinion letters warranted that the mortgages affected the listed chattels. A thorough and meticulous reading of plaintiff's exhibits 4 and 6 convince us that these letters related only to the real estate described in the opinion letters. The author of the letter made absolutely no guarantee that the mortgages affected the chattels.
We therefore hold that the district court was correct in ruling that the legal malpractice suit against Noble M. Chambers and the law firm of Aaron, Aaron & Chambers was a tort action and that the one year prescriptive period found in La.C.C. Art. 3536 should govern.

ISSUE THREE
Having determined that the one year tort prescriptive period is applicable to Rayne State Bank's action against Mr. Chambers and his law firm, we must now consider when prescription commenced to run.
The appellant maintains that the district court erred because it ruled that prescription began to run in this case in March 1980, when the bank discovered that the mortgages were defective. The district court went on to hold that one year elapsed between the discovery of the defect in the mortgage and the April 28, 1981 filing of the third party action by Rayne State Bank against the defendants in bankruptcy court.
The appellant premises his argument on Article 3537 of the Louisiana Civil Code which then stated that the one year prescriptive period resulting from torts runs from the day "on which the injurious words, disturbance or damage [was] sustained." The appellant argues that Rayne State Bank was not damaged by the defects *416 in the mortgage until Rimmer and Garrett and Tobilar filed complaints to avoid mortgage in the bankruptcy courts.
We disagree with the appellant. We believe the plaintiff was damaged when the defective chattel mortgages were transferred to it as security for the loans it made to Rimmer and Garrett and Tobilar. Because those mortgages did not comply with the statutory requirement that they state the location of the chattels, they were invalid. Since the chattel mortgages were invalid Rayne State Bank lost the chattels as partial security for the loans. Rayne State Bank was damaged when it made a loan which it thought was secured when in fact it was not.
The district judge was correct in ruling that prescription began to run on the bank's malpractice claim against Chambers and his law firm in March of 1980 when Mr. Heller informed the bank of the defects in the mortgage.
Whatever is notice enough to excite attention and put the party on his guard and call for inquiry is tantamount to knowledge or notice of everything to which inquiry may lead and such information or knowledge as ought to reasonably put the party on inquiry is sufficient to start the running of prescription. Cartwright v. Chrysler Corporation, 255 La. 597, 598, 232 So.2d 285 (1970), and Lemoine v. Avoyelles Farmers Coop., 307 So.2d 762 (La. App. 3rd Cir.1975).
We therefore hold that the district judge properly granted the peremptory exception of prescription as one year elapsed between the bank's discovery of the defects and the filing of the third party action in the bankruptcy court.

ISSUE FOUR
The plaintiff-appellant raises for the first time on appeal a very novel issue. It contends that as the district court found that Mr. Heller informed the bank of the defects in the mortgage, and because Mr. Heller suggested as a possible remedy that the bank keep the defects a secret from the debtors Mr. Heller breached his duty to the bank by not informing them that prescription had begun to run on any potential claim it had against Mr. Chambers for preparing the defective mortgage.
The pleadings in this case contain no such allegations of wrongdoing by Mr. Heller nor is there any testimony as to whether the prescription issue was discussed at the HellerPrevost meeting. In Simon v. Duet, 177 La. 337, 148 So. 250 (1933), our Supreme Court held, "[n]o citation of authority is necessary to support the propositions that a plaintiff cannot recover on a cause of action not alleged and that he cannot prove that which he does not allege." We fail to find anything in the record to support the appellant's allegations that the pleadings were expanded by the testimony to include this issue. We therefore hold that this is not a proper issue on appeal.
For the above and foregoing reasons the decision of the district court which granted the peremptory exception of prescription filed by defendants, Noble M. Chambers, Aaron, Aaron and Chambers, and the insurer, is affirmed. The decision of the district court dismissing this action against Edward Heller, his law firm, and the insurer, on the basis of a peremptory exception of prescription is amended to dismiss the plaintiff's action against those defendants based on the facts of the case. All costs on appeal to be assessed against plaintiff-appellant.
AFFIRMED, AS AMENDED.
NOTES
[1] The officers and directors of Tobilar, Inc. and Rimmer and Garrett, Inc. were Larry Garrett, Thomas Garrett, and William Marsh.
[2] On January 1, 1984, Title XXIV of Book III of the Louisiana Civil Code was amended and reenacted. Prior to this legislative action La.Civ. Code Art. 3544 governed the prescriptive period for contracts. The prescriptive period for actions based upon contracts is now found in La.Civ.Code Art. 3499.
[3] Prior to the amendment and reenactment of Title XXIV of Book III of the La.Civ.Code, La. Civ.Code Art. 3536 governed the prescriptive period for tort actions. Now, La.Civ.Code Art. 3492 establishes the prescriptive period for torts.