499 So.2d 1330 (1986)
Gregory OLIVIER, et ux., Plaintiffs-Appellants,
v.
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, Defendant-Appellee.
No. 86-51.
Court of Appeal of Louisiana, Third Circuit.
December 10, 1986.
Rehearing Denied January 14, 1987.
*1331 Russell T. Tritico, Lake Charles, for plaintiffs-appellants.
Patrick A. Juneau, Jr., Lafayette, Plauche, Smith and Nieset, A. Lane Plauche, Ronald J. Bertrand, Lake Charles, for defendant-appellee.
Before GUIDRY, FORET and DOUCET, JJ.
GUIDRY, Judge.
This is an action for damages for alleged legal malpractice. Plaintiffs, Gregory and Beverly Olivier, filed suit against National Union Fire Insurance Company of Pittsburgh, PA (National Union), the separate liability insurer of attorneys Ronald J. Bertrand and Thomas E. Gibbs. The Oliviers assert that they sustained damages due to the alleged negligence and/or breach of contract of attorneys Bertrand and Gibbs in connection with prior adoption proceedings. National Union filed exceptions of prescription. The trial judge maintained the exceptions and plaintiffs appealed to this court.[1]

FACTUAL BACKGROUND
Gregory and Beverly Olivier retained the services of attorney, Thomas E. Gibbs, in early 1982 for the purpose of adopting a child to be born to Elvira Segura. The child was born on May 14, 1982. Prior to the birth of the Segura child, Gibbs prepared a draft of a proposed act of surrender in compliance with La.R.S. 9:422.6, and forwarded same by mail to the Oliviers with instructions that an attorney would have to be retained to represent Segura, the natural mother. This attorney, according to the instructions, was to complete the act of surrender and witness Segura's signature thereon.
Pursuant to these instructions, the Oliviers ultimately contacted Ronald J. Bertrand who agreed to represent Segura. The Oliviers delivered the act of surrender prepared by Gibbs to Bertrand. Thereafter, Bertrand retyped the agreement and filled in the required necessary information. In retyping the act, a critical provision was inadvertently omitted by Bertrand. On May 20, 1982, Segura signed the act of surrender, transferring custody of her child to the Oliviers, in the presence of Bertrand. Bertrand thereafter forwarded the executed act to Gibbs. Neither Bertrand nor Gibbs detected the omission in the document which was retyped by Bertrand and ultimately signed by Segura.
On June 4, 1982, Segura executed a document entitled "Declaration of Revocation of Adoption", wherein she expressed her intention not to give her child up for adoption. On June 8, 1982, the Oliviers' petition for adoption was filed. Segura filed an exception of no cause of action on September 20, 1982, asserting the invalidity of the act of surrender. The trial court sustained this exception on September 30, 1982 and dismissed the Oliviers' petition for adoption. On appeal, this court affirmed the trial court judgment in the matter entitled, In re G.O., 433 So.2d 1115 (La.App. 3rd Cir.1983), wherein we held that the act of *1332 surrender executed by Segura was invalid, in that, it failed to specifically recite the consent of the parent (Segura) to the adoption, as required by La.R.S. 9:422.6(3).[2]
On April 5, 1984, the Oliviers filed the instant suit against National Union, as the insurer of both Gibbs and Bertrand. In their petition, the Oliviers charged Gibbs and Bertrand with negligence in failing to detect the crucially omitted provision from the act of surrender. The Oliviers also asserted that an attorney-client relationship existed as to both attorneys and that both warranted, either expressly or impliedly, that "the technical formalities of the adoption requirements would be met".
National Union filed exceptions of prescription. Following a hearing on the exceptions, the trial court rendered judgments on April 8, 1985 and April 12, 1985, sustaining the exception as it related to actions of Bertrand and overruling the exception as it related to actions of Gibbs.
In his written reasons for judgment, the trial judge stated:
"Plaintiffs' petition states an action both in tort and in contract. As to the action in tort, it is clearly prescribed as to both attorneys. If prescription did not start running on May 20, 1982, the date the Act of Surrender was signed, it certainly began running at some point in time when plaintiffs had knowledge of the defect and of their malpractice claim in the course of the litigation on or before September 30, 1982, the date the trial judge signed a formal judgment sustaining the exception of no cause of action."
As to the Oliviers' action in contract, the court found that there was no attorney-client relationship between Bertrand and the Oliviers, since Bertrand was retained to represent Segura. Thus, the court held that the ten year prescription on actions in contract as provided by La.C.C. art. 3499 was inapplicable as to the Oliviers' claim regarding Bertrand.
However, as to the Oliviers' claim against National Union as insurer of Gibbs, the trial court found that there did exist an attorney-client relationship between the parties. In reliance upon the Third Circuit case of Wingate v. National Union Fire Insurance Company, 435 So.2d 594 (La. App. 3rd Cir.1983), writ denied, 440 So.2d 762 (La.1983), the trial court held that the plaintiffs' action stated a claim both in tort and in contract, and therefore, the longer prescriptive period was applicable.[3]
On August 9, 1985, National Union, as insurer of Gibbs, filed a "Motion to Reconsider Previous Rulings on Peremptory Exception of Prescription ...". Through this motion, National Union re-asserted its position that the applicable prescriptive period in the instant case was the one year tort prescriptive period. In support of its position, National Union directed the trial court's attention to the recently decided case of Rayne State Bank & Trust Co. v. National Union Fire Insurance Co., 469 So.2d 409 (La.App. 3rd Cir.1985),[4] in which this court expressly rejected its previous position in Wingate, supra, and adopted the position taken by the First Circuit Court of Appeal in Cherokee Restaurant, Inc. v. Pierson, supra (see footnote 3).
*1333 Following a hearing on the motion, the trial judge rendered judgment on August 27, 1985, in favor of National Union, as insurer of Gibbs, sustaining the exception of prescription of one year. It is from this latter judgment that plaintiffs appeal.

ASSIGNMENTS OF ERROR
Plaintiffs-appellants set forth the following assignments of error on appeal:
1. The trial court erred in "reconsidering" its prior ruling as to the prescription issue;
2. The trial court erred in failing to consider the primary purpose for Gibbs' employment, i.e., to obtain consent to the adoption from the natural mother;
3. The trial court erred in failing to find that Gibbs' failure to detect the error in the act of surrender amounted to non-performance, thus governed by the ten year prescription of La.C.C. art. 3499; and,
4. The trial court erred in determining that prescription began to run prior to September 16, 1983, the alleged date on which the Supreme Court denied writs.

TORT VS. CONTRACT
The first issue which we consider is whether plaintiffs' suit sounds in contract or in tort or in both.
The trial court, in its judgment of April 12, 1985, relied upon our decision in Wingate, supra, wherein we held that a legal malpractice action may state a claim both in tort and in contract. In so holding, we expressed our disagreement with the First Circuit's decision in Cherokee Restaurant, supra, which held that:
"... A malpractice action against an attorney will now normally be subject to the one year prescriptive period of La. Civ.Code art. 3536. However, when an attorney expressly warrants a particular result, i.e., guarantees winning a lawsuit, guarantees title to property, guarantees or warrants the ultimate legal effect of his work product, or agrees to perform certain work and does nothing whatsoever, then clearly there would be an action in contract and the ten year prescriptive period of La.Civ.Code art. 3544 would apply."
In Rayne State Bank & Trust Co. v. National Union Fire Insurance Co., 469 So.2d 409 (La.App. 3rd Cir.1985), we re-evaluated our prior position held in Wingate, stating:
"After considerable analysis and contemplation we adopt the holding of Cherokee Restaurant, Inc. v. Pierson, supra. We realize that our decision to adopt the holding of Cherokee Restaurant, is inconsistent with this Court's holding in Wingate v. National Union Fire Insurance Company, supra, however, we are convinced that the reasoning and holding of Cherokee Restaurant is the better and more modern method of determining whether a legal malpractice case sounds in tort or contract and which prescriptive period should apply.
We are particularly persuaded that the Cherokee Restaurant rationale is the better view in light of the fact that legal malpractice has traditionally been treated as an action ex delicto. Note, Legal malpractice: a tort or contract-prescriptive period? Cherokee Restaurant v. Pierson, 44 La.L.Rev. 1495 (1984), and Corceller v. Brooks, 347 So.2d 274 (La. App. 4th Cir.1977)."
In Rayne State, an attorney was retained to prepare two mortgages to secure loans made from Rayne State Bank. The mortgages, entitled "Special Mortgage with Chattel", included immovable property as well as certain described chattels. The mortgages were executed in favor of Rayne State Bank and were recorded on January 22, 1979. It was later discovered that the mortgages failed to recite the location where the chattels could be found, as then required by La.R.S. 9:5352. The attorney subsequently issued opinion letters to Rayne State Bank bearing upon the property affected by the mortgages. An action was filed on March 24, 1982, alleging that the attorney committed legal malpractice *1334 in failing to recite the locations of the chattels in the mortgages.[5]
After applying the Cherokee Restaurant analysis, we held in Rayne State that the one year tort prescriptive period was applicable:
"... Preparation of a defective mortgage due to a failure to make the mortgage comply with the statutory requirements prescribed by law would be a breach of the attorney's duty to his client. Such a breach would constitute negligent behavior which is governed by the one year tort prescriptive period in La.C.C. Art. 3536.3" (Footnote omitted).
Although the Supreme Court reversed our decision in Rayne State,[6] it did so on other grounds. The Supreme Court, in finding that the one year tort prescriptive period had not elapsed, was not faced with the issue of the applicability of the ten year contract prescriptive period. However, in a footnote, the court noted:
"...
Since Rayne State Bank's legal malpractice action is based solely on the alleged negligence of Mr. Chambers in drafting defective mortgages, the decision of the court of appeal that the one year prescriptive period for delictual actions must apply is correct."
The court also stated that there was no express warranty by the attorney as to the validity of the mortgages, but rather, through the opinion letters, he warranted the validity of the title to the immovable property. We conclude that these statements are support for the rationale set forth in Cherokee Restaurant and adopted by this court in Rayne State.
Therefore, in light of the above jurisprudence, we find that the trial court did not err in holding that the plaintiffs' legal malpractice action stated a cause of action ex delicto and not ex contractu. Although plaintiffs assert that Gibbs' failure to detect the omitted provision in the act of surrender amounts to a breach of warranty, we find no evidence of any express warranty for specific results on the part of Gibbs. As was stated by this court in the recent legal malpractice case of Ragsdale v. Sanders, 488 So.2d 250 (La.App. 3rd Cir.1986):
"...
Because the contract between the parties created no specific obligations or duties on the part of the defendant, in and of itself, the duty which was owed by the defendant is that duty which arises from the law. This duty encompasses all of the provisions of the Code of Professional Responsibility which govern the practice of law. The alleged breach of contract asserted by the plaintiff is more properly characterized as a breach of the legal duties imposed on the defendant by law. Such a breach would constitute negligent behavior which is governed by the one year prescriptive period."

IS PLAINTIFFS' TORT ACTION PRESCRIBED
Having determined that the one year tort prescriptive period is applicable, we are faced with the issue of when prescription began to run against plaintiffs' action. Plaintiffs argue on appeal that prescription did not commence running until September 16, 1983, when the Supreme Court allegedly denied a writ application in the adoption suit instituted by plaintiffs. Although not giving a specific date as to the commencement of prescription, the trial court stated that "... it certainly began running at some point in time when plaintiffs had knowledge of the defect and of their malpractice claim in the course of the litigation on or before September 30, 1982, the date the trial judge signed a formal judgment sustaining the exception of no cause of action".
In Rayne State Bank & Trust Co. v. National Union Fire Insurance Co., supra, the Louisiana Supreme Court stated:
*1335 "In Louisiana prescription does not begin to run until damage is sustained. The tort prescription provisions in former C.C. 3537 were reenacted without substantive change in 1984 as C.C. 3492. C.C. 3537 provided that the one year prescriptive period for delictual actions runs "from [the day] on which the injurious words, disturbance, or damage were sustained."
"Mere notice of a wrongful act will not suffice to commence the running of the prescriptive period. The reason is clear. In order for the prescriptive period to commence, the plaintiff must be able to state a cause of action  both a wrongful act and resultant damages. Because the damage must necessarily occur after the wrongful act, prescription runs from that point and not from the date of the wrongful act. See Owens v. Martin, 449 So.2d 448 (La.1984), reaffirming Jones v. Texas & Pacific Ry. Co., 125 La. 542, 51 So. 582 (1910). Thus, until damage was `sustained' by the bank, it had no cause of action, and prescription did not commence to run on the date the bank received notice of possibly fatal defects in the mortgages."
The court thereafter held that prescription on the legal malpractice action commenced when a bankruptcy suit, which the bank was forced to defend, was filed, regardless of the fact that the plaintiff was put on notice of the alleged defects in the mortgages prior to such date.
The court in Rayne State noted that it was not necessary that a loss should have already been suffered in order to serve as the basis for the damage claim. It is sufficient that the plaintiff show that a loss is going to be suffered or is sure to result.
In the instant case, plaintiffs were put on notice of the possible defects in the act of surrender on September 20, 1982, when Segura filed an exception of no cause of action in the adoption proceedings, asserting the invalidity of the act of surrender. It was at this time that the Oliviers discovered or should have discovered the existence of facts that would have enabled them to bring suit against Gibbs. Thus, under the rationale of Rayne State, supra, prescription of the Oliviers' legal malpractice action against Gibbs, unless otherwise suspended, commenced running on September 20, 1982. For the reasons which follow, we conclude that the course of prescription was suspended, at least until May 25, 1983, and therefore, plaintiffs' action was not prescribed when the instant suit was filed.
As noted earlier, the trial court in the adoption proceedings sustained the exception of no cause of action against the Oliviers on September 30, 1982, determining that the act of surrender was invalid. The Oliviers, through their attorney Gibbs, appealed this decision to the Third Circuit Court of Appeal. On May 25, 1983, this court upheld the trial court's finding as to the invalidity of the act of surrender. Writs were allegedly denied by the Supreme Court on September 16, 1983.
On appeal, the Oliviers argue that prescription should not have commenced running until the final disposition of this suit, allegedly when writs were denied by the Supreme Court, since they were not practically able to bring a malpractice suit against Gibbs while he was still serving in the capacity as their attorney. In brief, the Oliviers assert that, "[i]t would have been incongruous of them to file suit (in order to interrupt prescription) against the very attorneys upon whose work they were now attempting to rely for a successful conclusion to their adoption petition".
In the factually similar case of Blanchard v. Reeves, 469 So.2d 1165 (La.App. 5th Cir.1985), writ denied, 476 So.2d 347 (La. 1985), the Fifth Circuit Court of Appeal was presented with this very issue. In Blanchard, plaintiff brought a legal malpractice suit against his former attorney who was unsuccessful in litigating his medical malpractice claim. The medical malpractice action arose as the result of an operation on Blanchard's hand by a Dr. Farmer on December 21, 1976. In March, 1979, another physician determined that, despite Dr. Farmer's surgery, some metal fragments had remained in Blanchard's *1336 hand. These fragments were removed on March 16, 1979. Attorney Reeves filed suit for Blanchard on March 12, 1980, asserting the negligence of Dr. Farmer. On June 16, 1982, the trial court sustained Dr. Farmer's exception of prescription, dismissing Blanchard's suit. Reeves continued to represent Blanchard, whose damage suit had been dismissed on prescription, through the appeal process and encouraged the appeals. Reeves appealed the trial court's decision to the First Circuit Court of Appeal,[7] which affirmed the lower court's holding on April 5, 1983. The Louisiana Supreme Court denied writs on September 23, 1983. Blanchard filed suit against Reeves for legal malpractice on March 14, 1984. This suit was dismissed by the trial court on an exception of prescription on October 10, 1984.
After determining that the one year tort prescriptive period was applicable, the court in Blanchard was faced with the determination of when the one year prescriptive period commenced running. As in the instant case, Blanchard argued on appeal that prescription did not begin running until September 23, 1983, when the Supreme Court denied the writ application on the suit against Dr. Farmer. In response to this argument, the court of appeal stated:
"In the instant case, had the attorney-client relationship ended after trial, we would apply the rule that prescription began to run from the date of the adverse trial judgment, when the plaintiff learned that the suit had been filed late. Sturm v. Zelden & Zelden, [445 So.2d 32 (La.App. 4th Cir.1984)], supra. However, the issue is complicated by the fact that the attorney continued to represent Blanchard and pursue the case through the appellate process. There is no evidence to suggest that Reeves admitted to having been in error or that he was liable or in any way implied that an appeal was not worthwhile. On the other hand, there is none to suggest that the attorney deliberately and in bad faith continued to appeal in order to let prescription run on the plaintiff's cause of action against himself. What is clear is that the attorney-client relationship continued through denial of writs by the Supreme Court."
The court, in holding that prescription began to run on the date the Supreme Court denied writs on the damage suit, reasoned as follows:
"The continuance of the attorney-client relationship poses a dilemma which reaches a crisis at time of judgment. The judgment then demonstrates that there is a conflict of interest between attorney and client as to cause of dismissal of the client's claim. At the same time it is beneficial to both if the matter is successfully appealed. As an attorney, Reeves was obligated to inform his client of the conflict of interest. The record does not disclose that he did. Had he done so, the client could have made a knowing choice as to whether to continue the relationship or seek other legal counsel. On the other hand, if Reeves was not aware of the conflict of interest, he would have us impose upon his client a greater burden of legal knowledge than he possessed.1 His continued representation without disclosure requires us to impose the principle of contra non valentum.2 We find that the attorney's conduct induced the plaintiff-client to delay filing the legal malpractice suit and prescription did not begin to run until denial of writs and cessation of the attorney-client relationship. Thus, suit filed against the attorney on March 14, 1984 was timely." (Footnotes omitted).
It is unusual for us to come across a case squarely in point with ours. However, Blanchard v. Farmer, supra, is just such a case. We agree with the Fifth Circuit's disposition of the issues presented and likewise choose a similar resolution for *1337 the instant case. Due to the continuing attorney-client relationship between the Oliviers and Gibbs, we find that the civilian doctrine of contra non valentum[8] comes into play to suspend the running of prescription until such time that the Oliviers could practically have brought a malpractice suit against Gibbs, i.e., upon the termination of the attorney-client relationship. To hold otherwise would create a situation where an attorney could effectively defeat a malpractice claim against himself by utilizing the appeals process to continue the attorney-client relationship until such time as prescription had run. Despite plaintiffs' claims that this relationship ended on September 16, 1983, we are presented with no evidence of a writ denial by the Supreme Court. Thus, we must conclude that the attorney-client relationship between the Oliviers and Gibbs terminated when this court's judgment of May 25, 1983, became final. Such being the case, the Oliviers' legal malpractice action filed on April 5, 1984 was timely. We therefore reverse the trial court's judgment dismissing the Oliviers' malpractice action against National Union, as the liability insurer of Gibbs.

RECONSIDERATION OF INITIAL JUDGMENT
Appellants' final argument on appeal deals with the trial court's "reconsideration" of its judgment dated April 12, 1985, wherein it overruled the exception of prescription as it related to Gibbs.
Since we decide that the trial judge erred in his judgment of August 27, 1985, maintaining the exception of prescription as to National Union, the liability insurer of Gibbs, we need not discuss the merits of appellants' argument in this respect. Suffice it to say, however, that the trial judge's ruling of April 12, 1985 was simply an interlocutory judgment, subject to subsequent review by the trial judge during the progress of the case. La.C.C.P. art. 1841; Arnold v. Stupp Corp., 249 So.2d 276 (La.App. 1st Cir.1971); Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328 (1972).

DECREE
For the above and foregoing reasons, the judgment of the trial court maintaining the exception of prescription as to National Union, the liability insurer of Gibbs, is reversed. The case is remanded to the trial court for further proceedings consistent with this opinion. Appellee, National Union, is cast with all costs of these proceedings.
REVERSED AND REMANDED.

ON REHEARING
PER CURIAM.
In its application for rehearing, defendant-appellee contends that we erred in applying the rationale of Blanchard v. Reeves, 469 So.2d 1165 (La.App. 5th Cir. 1985), writ denied, 476 So.2d 347 (La.1985) to the instant case because the record does not reflect that National Union's insured, Thomas E. Gibbs, continued to represent plaintiffs-appellants through the writ denial by the Louisiana Supreme Court on May 25, 1983. On the other hand, plaintiffs-appellants, in their opposition to the application for rehearing, assert that the alleged facts alluded to by defendant-appellee in its application for rehearing are not in the record and, contrary to such assertions, National Union's insured continued as co-counsel of record until the denial of writs by the Louisiana Supreme Court on May 25, 1983. The issue presented by the application for rehearing is a factual issue which is not completely foreclosed by the present record. In the interest of justice, we will reserve to the parties the right, after remand, to present additional evidence on this issue and further reserve to defendant-appellee the right to reurge the exception of prescription after remand. *1338 Subject to this reservation of rights, the application for rehearing is denied.
NOTES
[1] Plaintiffs appeal the trial court's judgment only insofar as it relates to National Union, as the insurer of Gibbs. The judgment against National Union, as the insurer of Bertrand, is therefore final.
[2] Although both parties in brief and the trial judge in his reasons for judgment state that the Louisiana Supreme Court denied a writ application on this case on September 16, 1983, there is no evidence in the record of such, nor is there any published account of a writ denial. In any event, the judgment dismissing the Oliviers' petition for adoption of the Segura child is now final.
[3] In adopting the position taken by this court in Wingate, supra, the trial judge specifically rejected the holding in Cherokee Restaurant, Inc. v. Pierson, 428 So.2d 995 (La.App. 1st Cir.1983), writ denied, 431 So.2d 773 (La.1983), wherein the First Circuit Court of Appeal held that the normal legal malpractice action is a tort action prescribed by one year and that only when an attorney breaches an express warranty of result does an action of breach of contract arise, in which case the ten year prescriptive period is applicable.
[4] The Supreme Court subsequently affirmed in part and reversed in part (on grounds not pertinent to the present discussion) our decision in Rayne State, supra, at 483 So.2d 987 (La. 1986).
[5] No judicial determination has of yet been rendered as to the actual validity or invalidity of the mortgages in question.
[6] 483 So.2d 993 (La.1986).
[7] Blanchard v. Farmer, 431 So.2d 42 (La.App. 1st Cir.1983), writ denied, 438 So.2d 571 (La. 1983).
[8] For a thorough discussion of the doctrine of contra non valentum, see Corsey v. State Dept. of Corrections, 375 So.2d 1319 (La.1978).