772 So.2d 874 (2000)
Lawrence T. GETTYS and Lawrence G. Gettys
v.
SESSIONS AND FISHMAN, L.L.P., Max Nathan, Jr., Stanley Cohen, Richard J. Autin, et al.
Lawrence T. Gettys
v.
Autin-Gettys-Cohen, Insurance Agency, Inc. Sessions & Fishman, Max Nathan, et al.
Nos. 00-CA-1077, 00-CA-1078.
Court of Appeal of Louisiana, Fifth Circuit.
October 31, 2000.
Rehearing Denied December 4, 2000.
*875 J. Douglas Sunseri, Kirk J. Frosch, Nicaud, Sunseri & Fradella, L.L.C., Metairie, for plaintiff-appellant, Lawrence T. Gettys.
David C. Loeb, Daniel E. Zelenka, II, Molaison, Loeb, Greenberg & Zelenka, LLP, Gretna, for defendant-appellee, Sessions and Fishman, L.L.P., Max Nathan, Jr.
(Court composed of CHARLES GRISBAUM, Jr., C.J., EDWARD A. DUFRESNE, Jr. and JAMES L. CANNELLA, JJ.)
GRISBAUM, Chief Judge.
Plaintiff-appellant, Lawrence T. Gettys, appeals the trial court's judgment granting defendants-appellees' (Sessions and Fishman, L.L.P., Max Nathan, Jr., A.P.L.A., and David Corkern) exception of prescription and preemption.

ISSUE
We must determine whether the trial court erred in granting defendants' exception of prescription and/or preemption.

FACTS AND PROCEDURAL HISTORY
In late 1992, Max Nathan, Jr. and David Corkern of Sessions and Fishman represented Lawrence T. Gettys in connection with the merger of his business, Gettys Insurance Agency, Inc. with Autin-Cohen Insurance Agency, Inc. Richard Autin and Stanley Cohen owned the Autin-Cohen Insurance Agency. After the merger, the agency adopted the Autin-Gettys-Cohen Insurance Agency (hereinafter "AGC") as its name.
To satisfy a CNA Insurance Company requirement, Gettys, Autin, and Cohen agreed that Gettys would own 51% of the stock and that Autin and Cohen would each own 24.5% of the stock. The merger principals, however, further agreed that Gettys and/or his son would control half of the company; Autin and Cohen would control the other half. To effectuate this, Gettys established a voting trust in favor of Autin and Cohen for 1% of his stock, thus establishing 50-50 voting power among the merger principals.
The merger documents were executed on April 12, 1993. In preparing the merger documents, David Corkern erroneously stated that Gettys was depositing 490 shares of Company stock in a voting trust for Autin and Cohen. Corkern stated in his deposition that he initially miscomputed that 490 shares equaled 1% when actually *876 245 shares equaled 1%. Approximately three weeks after the documents were prepared, Corkern discovered the error and spoke to Max Nathan about it. They decided to correct the error by replacing the two pages on their copy that reflected the error. They did this without the knowledge of the parties to the merger.
Gettys became disabled in June 1994. From 1994-1995, AGC corresponded with Gettys about obtaining disability benefits, possible dissolution, liquidation, and/or buy-out. In September 1994, AGC terminated, allegedly due to the companies' financial problems, Gettys' salary and benefits, which were supposed to be part of the merger agreement.
On April 13, 1996, Gettys filed suit against Sessions and Fishman, Max Nathan, David Corkern alleging several acts of legal malpractice. On June 10, 1996, Gettys filed a First Supplemental and Amending petition adding Richard Autin, Stanley Cohen, and Autin-Gettys-Cohen Insurance Agency, plus other allegations of malpractice against Sessions. On October 25, 1996, Gettys filed a Second Supplemental and Amending Petition adding to the alleged acts of malpractice against Sessions. On November 10, 1997, Gettys filed a Third Supplemental and Amending Petition adding the allegations concerning the mistake made on the voting trust agreement and the alteration made without the parties knowledge. Finally, on December 29, 1998, Gettys filed a Fourth Supplemental and Amending Petition adding the Sessions malpractice insurance carrier as a defendant. The trial court summarized the allegations into six general categories:
1) Failure of the defendants to confect an employment agreement;
2) Failure of the defendants to confect a buy-sell agreement;
3) Failure to provide Larry T. Gettys sufficient votes on the Board of Directors;
4) Failure to properly confect the voting trust agreement;
5) Conflict of interest arising out of the representation of AGC post merger;
6) Failure to timely have Larry T. Gettys dismissed from the Herndon litigation.
Sessions filed an exception of prescription and preemption. After a hearing on November 3, 1999, the trial court maintained defendants exception. In its oral reasons for judgment, the trial court found the following:
Now it would it's my impression that, I think, the younger Gettys' salary was terminated in '93, I want to say April of '93. And Mr. Gettys', the older Mr. Gettys' salary, was terminated in September of '94. I would think by September of '94 when his salary was terminated, Mr. Gettys would know that he has a problem. I'm going through these things and the latest date that I can come up where he would have had a claim would have been in December of '95 or December of '94, giving him all the benefits of any doubt on preemption which would have required that he file the suit by December of '95. And it was not filed until April of '96.
The Court is going to maintain the exception.
Plaintiff appeals this judgment.

LAW AND ANALYSISISSUE ONE
In support of his contention that the trial court erred in granting defendants' exception of prescription and/or preemption, Gettys contends that the error itself and the alteration should be considered as separate and distinct acts with different prescriptive periods, that under the continuous representation rule prescription was suspended until he terminated Sessions representation as his counsel, or finally that Sessions concealment of the error and change constitutes fraud and thus prescription was suspended until the error was discovered.
The prescriptive period for legal malpractice claims is governed by La. R.S. 9:5605:

*877 A. No action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
B. The provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred. However, with respect to any alleged act, omission, or neglect occurring prior to September 7, 1990, actions must, in all events, be filed in a court of competent jurisdiction and proper venue on or before September 7, 1993, without regard to the date of discovery of the alleged act, omission, or neglect. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
C. Notwithstanding any other law to the contrary, in all actions brought in this state against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional law corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, the prescriptive and peremptive period shall be governed exclusively by this Section.
D. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
E. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.
Under this statute, the plaintiff must file his legal malpractice claim within one year from the date of the negligent act or omission or one year from the date the alleged negligent act was discovered or should have been discovered. In addition, all claims must be filed within three years of the alleged negligent act.
Appellant first claims that Corkern's error in inserting 490 shares in the voting trust document and the act of correcting it without the parties' knowledge should be considered as two separate and distinct acts with different prescriptive periods. We disagree. Separate acts of malpractice shall be considered a single tort where the underlying factual basis is the same and the alleged acts occurred during continuous period of representation. Taussig v. Leithead, 96-960 (La. App. 3 Cir. 2/19/97), 689 So.2d 680. The alleged acts of malpractice, here, involve the same factual basis and occurred during Sessions representation of Gettys during the merger of his agency and Autin and Cohen's agency. Accordingly, we shall not consider them as two separate torts.
The record shows that the alleged act or omission that may constitute malpractice occurred on April 12, 1993 when Corkern inserted 490 shares into the voting trust document instead of 245 shares. Gettys filed his malpractice suit on April 13, 1996, three years and one day from the date of the alleged act. Because April 12, *878 1996 was a Sunday, Gettys had until April 13, 1996 to file his claim, thus his malpractice claim is not preempted under La. R.S. 9:5605.
We must next consider whether his claim is prescribed. Appellant contends that prescription was suspended until November 1995 when he terminated Sessions as his counsel. Appellant relies on the continuous representation rule as authority for this proposition. We, note, initially that the continuous representation rule does not suspend the running of the preemptive period, however, it does suspend the running of the prescriptive period. La. Civ.Code art. 3461; Reeder v. North, 97-0239 (La.10/21/97), 701 So.2d 1291; Lima v. Schmidt, 595 So.2d 624 (La.1992); Latter v. ABC Ins., Co., 97-1968 (La.App. 4 Cir. 9/30/98), 719 So.2d 653, writ denied, 98-2623 (La.12/11/98), 730 So.2d 459; Perez v. Shook, 97-0420 (La.App. 4 Cir. 12/3/97), 703 So.2d 821, writ denied, 98-0438 (La.3/26/98), 716 So.2d 894.
In recognizing the continuous representation rule, the supreme court stated, "This suspension principle is based on the third application of contra non valentem, which suspends prescription when the debtor has done some act effectually to prevent the creditor from availing himself of his cause of action." Lima, 595 So.2d at 630. (citing Blanchard v. Reeves, 469 So.2d 1165, 1168 (La.App. 5 Cir.)), writ denied, 476 So.2d 347 (La.1985).
Under this rule, prescription is suspended "during the attorney's continuous representation of the client regarding the specific subject matter in which the alleged wrongful act or omission occurred." Lima, 595 So.2d at 630 (citing Brand v. New England Insurance Co., 576 So.2d 466, 468 (La.1991)). The supreme court further stated that the rule is intended to protect,
"... the integrity of the attorney-client relationship and affords the attorney an opportunity to remedy his error (or to establish that there has been no error), while simultaneously preventing the attorney from defeating the client's cause of action through delay." Wall v. Lewis, 393 N.W.2d 758, 763 (N.D.1986). The rationale behind this rule is that "[a] plaintiff cannot justly be held to be `sleeping on his rights' when he is relying upon a honored fiduciary relationship." Note, Civil ProcedureStatute of Limitations Accrual in Attorney Malpractice Actions: Thorpe v. DeMent, 20 Wake Forest L.Rev. 1017, 1038 (1984). Indeed, to hold to the contrary "would require a client to hire a backup lawyer to continually review the work of the primary lawyer." Gill v. Warren, 751 S.W.2d 33 (Ky.App.1988); See also Olivier v. National Union Fire Insurance Co., 499 So.2d 1330, 1337 (La.App. 3rd Cir.1986) (contrary holding would allow attorney to defeat malpractice claim by using appeal process to continue relationship until prescription has run).
Id.
This rule is important in "an ongoing, continuous, developing and dependent relationship between the client and attorney, with the latter seeking to rectify an alleged act of malpractice." Id. (citation omitted); Perez, 703 So.2d at 826.
We, note, that the Third Circuit has held, in contrast to the Louisiana Supreme Court and the Louisiana Fourth Circuit, which the continuous representation rule does not apply in legal malpractice actions. In light of the supreme court's decision in Lima, we decline to follow the Third Circuit's opinion in Lambert v. Toups, 99-72 (La.App. 3 Cir. 10/13/99), 745 So.2d 730.
Here, the record is clear that Sessions represented Gettys in connection with the Autin-Gettys-Cohen merger until November 1995. Thus, since he filed it on April 13, 1996, he filed it within the prescriptive period. Accordingly, since we find that Gettys' claim against Sessions is not preempted or prescribed, we further find that the trial court erred in granting defendants' *879 exception of preemption and/or prescription.
Because we find that Gettys' claim is not prescribed or preempted, we find it unnecessary to address his claims of fraud.
For the reasons assigned, we reverse and vacate the trial court's judgment, dated November 16, 1999, granting this exception, and remand for further proceedings.
REVERSED, VACATED AND REMANDED.
CANNELLA, J., concurs in the result.