719 So.2d 653 (1998)
Stanford LATTER and Robert L. Yuspeth
v.
ABC INSURANCE CO., J.B. Kiefer, Ann W. Schneider, and Kiefer & Rudman, a Professional Law Corporation.
No. 97-CA-1968.
Court of Appeal of Louisiana, Fourth Circuit.
September 30, 1998.
*654 Thomas A. Gennusa, II, Gina A. Gennusa, Metairie, for Plaintiffs-Appellees.
Paul B. Deal, Lemle & Kelleher, L.L.P., New Orleans, for Defendants-Appellants.
Before KLEES, BYRNES and LOBRANO, JJ.
LOBRANO, Judge.
This case was remanded by the Supreme Court because our original opinion erroneously designated September 13, 1993, rather than September 3, 1993, as the date suit was filed. Based on that erroneous date we granted defendant's exception of peremption, reversed the trial court's judgment in plaintiffs' favor and dismissed their lawsuit. We relied on the Supreme Court's decision in Reeder v. North, 97-0239 (La.10/2/97), 701 So.2d 1291. For the following reasons, we now reverse our original holding and affirm the trial court judgment.

FACTS AND PROCEDURAL HISTORY:
In June of 1983, Stanford Latter and Robert L. Yuspeth, plaintiffs, retained J.B. Kiefer and his law offices, defendants, to represent them in a claim against the State for rental arrearages and utility cost reimbursement. The plaintiffs' claim against the State arose as a result of a lease agreement wherein the State, through the Department of Health and Human Resources (DHHR), agreed to lease office space from plaintiffs.
Pursuant to a bid proposal, the State and plaintiffs executed a lease agreement for a five year term commencing November 1, 1981 and ending October 31, 1996. The first page of the lease provides a date of August 14, 1981 as the execution date, but the last page shows a date of September 1, 1981. Regardless, at least by September 1st the lease was signed by plaintiffs and R.P. Guissinger, Secretary of DHHR. Despite the fact that November 1, 1981 was the beginning date of the lease, the Department of Administration did not approve the lease until April 13, 1982 and the State did not take occupancy until July 15, 1982.
Kiefer, on plaintiffs' behalf, filed suit on November 18, 1985 seeking recovery for lost rent and utility expenses incurred from November 1, 1981 to July 15, 1982. The State responded with a peremptory exception of prescription which the trial court granted on September 13, 1991. A written judgment dismissing plaintiffs' suit was signed on October *655 4, 1991. Kiefer continued to represent plaintiffs and appealed to the First Circuit Court of Appeal. On March 12, 1993 that court affirmed the trial court judgment. On May 21, 1993 the Supreme Court denied writs.
Plaintiffs then filed the instant malpractice suit against Kiefer and his law corporation on September 3, 1993.[1] Defendants filed an exception of prescription as well as an answer asserting that plaintiffs' underlying claim lacked merit and thus the malpractice suit should be dismissed.
Because Kiefer admitted he was negligent in filing the underlying claim too late, he bore the burden in the instant malpractice suit to show that it lacked merit. Jenkins v. St. Paul, 422 So.2d 1109 (La.1982). Kiefer relied on the terms of the lease and La. R.S. 39:1641(A) to support his position. However, the trial court concluded that Kiefer failed to carry his burden, and that, had he timely filed suit, plaintiffs would have been successful in their underlying claim against the State. Consequently the court awarded plaintiffs damages in the amount of $81,856.22 plus interest and costs. The court did not rule on the prescriptive plea. Defendants perfect this appeal reurging their exception of prescription and asserting the trial court erred in finding that plaintiffs' underlying claim had merit. For the following reasons, we affirm.

PRESCRIPTION/PEREMPTION:
It is undisputed that Kiefer's error occurred sometime prior to November 18, 1985, the date he filed suit on plaintiffs' behalf against the State. At that time, prescription in a legal malpractice case was governed by Civil Code article 3492 which provides for a one year liberative prescriptive period. In 1990, the legislature enacted La. R.S. 9:5605, which provided that a legal malpractice claim prescribed within one year from the date of the negligent act or one year from the date the alleged negligent act was discovered or should have been discovered. The statute further provided that "even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission or neglect."
In 1992 the statute was amended by Act 611 to provide, inter alia, the following:
"The provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred. However, with respect to any alleged act, omission, or neglect occurring prior to September 7, 1990, actions must, in all events, be filed in a court of competent jurisdiction and proper venue on or before September 7, 1993, without regard to the date of discovery of the alleged act, omission, or neglect. The one year and three year periods of limitation provided in Subsection A of this section are peremptive periods within the meaning of Civil Code article 3458 and, in accordance with civil Code article 3461, may not be renounced, interrupted, or suspended."
In Lima v. Schmidt, 595 So.2d 624 (La. 1992), decided after the enactment of R.S. 9:5605 in 1990, but prior to the 1992 amendment, the Supreme Court applied the one year prescriptive period of Civil Code article 3492 where the negligent act occurred and the malpractice claim was filed prior to 1990. Because the period was prescriptive rather than peremptive, the court concluded that prescription was suspended "during the attorney's continuous representation of the *656 client regarding the specific subject matter in which the alleged wrongful act or omission occurred." Id. at 630.
In Perez v. Shook, 97-0420 (La.App. 4 Cir. 12/3/97), 703 So.2d 821, writ denied 98-0438 (La.3/27/98), 716 So.2d 894, this court interpreted the Lima decision to mean that if the malpractice cause of action occurs prior to its effective date, R.S. 9:5605 is not applicable and the one year prescription of article 3492 is applicable. Even though the malpractice suit in Perez was filed September 3, 1993, after the statute's effective date and after the 1992 amendment, because the negligent act occurred prior to 1990 we held that the "continuous representation" rule of Lima suspended prescription and therefore plaintiffs suit was timely.
In Reeder v. North, supra, decided by the Supreme Court six weeks prior to our decision in Perez v. Shook, supra, the alleged malpractice occurred prior to 1990, but the malpractice suit was filed September 15, 1994. Relying on the clear wording of subsection "B" of R.S. 9:5605, (the 1992 amendment) the court held that since the statute provides that the three year period is peremptive, it cannot be suspended, interrupted, or suspended. The court concluded that "there is no doubt that the legislature intended that three years after the act, omission, or neglect, the cause of action is extinguished, regardless of when the negligence is discovered and regardless of whether a malpractice action may be brought within that three year period." Reeder, supra at 1297. Because the period is peremptive, the court reasoned that the "continuous representation" rule of Lima was not applicable. The court held that "[b]ecause the negligent act occurred before September 7, 1990, Reeder had until September 7, 1993 [as per R.S. 9:5605(B)] to file the malpractice action...." Reeder at 1296. Since the malpractice action was filed September 15, 1994 the court held it was untimely.
Against this statutory and jurisprudential background, we analyze the prescriptive/peremptive issue in this case. Obviously, our initial error of transposing September 3, 1993 into September 13, 1993 requires a reconsideration by us because Subsection "B" establishes a cutoff date of September 7, 1993 for all claims wherein the "alleged act, omission, or neglect" occurred prior to September 7, 1990. Kiefer, however, argues that regardless of the error in the filing date, plaintiffs were aware of the malpractice claim when they were notified on September 13, 1991 that their suit against the State had been dismissed by the trial court as untimely. Thus says Kiefer, because plaintiffs did not file their malpractice claim until two years later, it has prescribed. In support, he cites Brand v. New England Ins. Co., 576 So.2d 466 (La.1991) and Bolton v. New England Ins. Co., 542 So.2d 135 (La.App. 1st Cir.1989) for the proposition that plaintiffs need not suffer the full extent of their damages (i.e. their underlying case does not have to be finally concluded) before prescription begins to accrue, only that they suffer an appreciable and actual harm.
Since the factual chronology of this case is identical to Perez v. Shook, supra (malpractice occurred before 1990 and suit was filed after 1990 but before September 7, 1993), that case would appear to be dispositive. Just as the attorney in Perez v. Shook continued to represent his client and thus suspended prescription, so did Kiefer in this case. However, even though the Supreme Court denied writs in Perez, the pronouncements in Reeder v. North admittedly question Perez's rationale. First, the Reeder court made clear that the three year peremptive period of R.S. 9:5605 retroactively applies to acts of malpractice which occurred prior to September 7, 1990, the Act's effective date. Second, the Reeder decision expressly rejects the continuous representation rule of Lima v. Schmidt, supra, because the three year period is peremptive rather than prescriptive. Yet, in distinguishing Lima the court implies that the continuous representation is still viable where the act of malpractice occurs and the lawsuit is filed prior to September of 1990.
As the Reeder court observed, the plain wording of R.S. 9:5605 makes clear that the legislature intended all claims of malpractice to be extinguished (perempted) three years after the negligent act occurs. When the statute was amended in 1992 to expressly *657 provide for retroactivity, the legislature eased the harshness of that provision by providing that as to negligent acts occurring prior to the September 7, 1990 effective date, aggrieved plaintiffs had until September 7, 1993 to file suit "without regard to the date of discovery of the alleged act, omission or neglect." Of course, if a malpractice claim had prescribed before September 7, 1990, the enactment of R.S. 9:5605, and its 1992 amendment could not revive the claim. However, if a claim was still viable when the act was passed, it remained viable through September 7, 1993.[2] In this case, the malpractice occurred at least by November 18, 1985 when plaintiffs' untimely suit against the State was filed. The continuous representation rule suspended prescription on that act of malpractice until May 21, 1993 when writs were denied by the Supreme Court. Consequently, plaintiffs' claim was viable on September 7, 1990 when R.S. 9:5605 became effective and thus their suit was timely when it was filed on September 3, 1993. We overrule defendant's exception of prescription.

MERITS OF THE UNDERLYING CLAIM:
The underlying claim was plaintiffs' suit against the State for rent and expenses incurred for the period November 1, 1981 to July 15, 1982. The premises were unoccupied at that time, even though the lease agreement provided a term beginning November 1, 1981. Paragraphs two (2) and three (3) of the lease agreement between plaintiffs (lessor) and the State (lessee) provide as follows:
2.
The consideration of this lease is the payment by Lessee to Lessor of the sum of FIVE HUNDRED FIFTY TWO THOUSAND, FOUR HUNDER[HUNDRED] NINETY NINE AND 80/100 ($552,499.80) DOLLARS, in Sixty (60) equal installments of NINE THOUSAND TWO HUNDRED EIGHT AND 33/100 ($9,208.33) DOLLARS each, the first installment being due and payable, on the 1st day of November, 1981, and the remaining installments being due and payable, respectively on the 1st day of each month thereafter; however, in the event occupancy by Lessee occurs subsequent to the first rental payment date Lessor waives any rights to rental payments for a period of thirty (30) days after lessee actually occupies the leased premises.
3.
Should the Lessee be unable to obtain possession of the leased premises within (60) days after Division of Administration approval of the lease, whether or not said delay is caused by the Lessor, the lessee shall be entitled to the remission of rent for such term during which the Lessee is deprived of possession, and to reimbursement for any damages which Lessee may suffer as a result of said deprivation of possession. In addition, should the Lessee be deprived of possession of the leased premises for a period of more than sixty (60) days, then this lease may be cancelled at the option of the Lessee.
The trial court reasoned that paragraph 2 refers to "delays in seeking payments until occupancy by the lessor." That interpretation, according to the trial court, is reinforced by "paragraph 3 of the lease and the provision for lump sum rental payable in 60 monthly installments." Finally, the court concluded that approval by the Department of Administration in April of 1982 had retroactive effect to the signing date of September 1, 1981.
Defendant argues the trial court's interpretation of paragraphs 2 and 3 is strained and ignores the overall intent of the lease language. Defendant says the court's reasoning is illogical in that it mandates payment of rent on unoccupied premises as if they were occupied. Defendant says further that when there is delayed occupancy the State is afforded relief in paragraph 3. Finally, defendant argues that La. R.S. 39:1641(A) makes clear that the lease is unenforceable until approval by the Department of Administration has been granted. For the following reasons, we disagree with defendant's arguments.
*658 The basis of defendant's argument is the last phrase of paragraph 2 wherein lessor waives any rights to rental payments for a period of thirty days after occupancy by lessee in those situations where the occupancy occurs after the first rental payment date. However, that phrase must be read in context with the entirety of paragraph 2. Initially, that paragraph sets forth the consideration for the please ($552,499.80) and how it is to be paid (sixty monthly installments on the first of each month beginning November 1, 1981). The last phrase modifies the rental payment schedule, not the rental amount, in the event of delayed occupancy. There, the lessor agrees that if occupancy occurs subsequent to the first of November, he will wait a period of thirty days after the actual occupancy date before the rental payments begin. It does not mean that the State is absolved from its rental obligation; only that it does not have to met those obligations until thirty days after a delayed occupancy. In other words, the State could not have been in breach of the lease agreement for failing to pay rent where it had not yet occupied the premises. However, once occupancy occurred, it had thirty days to fulfill its agreement. Defendant's contrary interpretation conflicts with the lease provisions which set forth the consideration ($552,499.80) and term (sixty months). Simply, those provisions would be meaningless if the State could delay occupancy to whatever date it chooses and thereby reduce the agreed upon rent and term of the lease.
While our interpretation is consistent with paragraph 3, defendant argues that paragraph 3 absolves the State from rent when possession is delayed. We find that, under the facts of this case, paragraph 3 is inapplicable. The pertinent language says that "the lessee shall be entitled to the remission of rent for such term during which the lessee is deprived of possession...." There is no evidence to suggest that lessee was ever "deprived of possession." The record fails to show that anything or anybody deprived the State of possession of the premises. The building was ready for occupancy November 1, 1981. Simply, the State's delayed possession was of its own choosing. It is our opinion that paragraph 3 was intended to protect the State when it was prevented from taking possession, whether or not it be the lessor's fault. Again, it would make no sense to say the State could escape its contractual obligations by simply delaying its occupancy of the leased premises. If that were the case, then there would be no reason for the lessor to execute a lease agreement.
Defendant further argues that because the Department of Administration did not approve the lease until April 13, 1982 it was unenforceable prior to that date. Louisiana Revised Statute 39:1641(A) provides, in pertinent part:
All contracts and agreements for the lease or rental of space for the housing of state agencies, their personnel, operations, equipment, or activities shall be made in the name of and by the authorized representative or representative body of the state agency but shall be made and entered into only with the approval of the commissioner of administration.
Defendant contends that since the State could not take possession until there was compliance with the above statute no rent was due for the period prior to compliance. We disagree.
It is undisputed the lease was initially executed by a duly authorized representative of the Department of Health and Human Resources. And, as correctly interpreted by the trial judge, we hold that the subsequent approval by the commissioner of administration ratified the agreement as written. Regardless of whether or not there was actual occupancy prior to the commissioner's approval, the lease provides for a sixty month term beginning November 1, 1981. That was never changed. If the State intended to change that term, it certainly could have indicated that intent when approved by the commissioner of administration. It did not. To interpret R.S. 19:1641(A) as defendant suggests would render the lease term meaningless. Simply, the statute is not intended to be an "escape clause" for the State. Once approved by the commissioner of administration, the lease becomes enforceable as written.
*659 For the above and foregoing reasons, the trial court judgment is affirmed.
AFFIRMED.
NOTES
[1] This date has been a source of confusion and consternation throughout these proceedings. Somehow it got transposed to September 13, 1993 in our original opinion. Perhaps the erroneous transposition was the result of a combination of a poorly stamped copy annexed to plaintiffs brief, combined with plaintiff's own clerical error on page 3 of their original brief, which gave the date as September 13, 1993. Or, perhaps it was the result of various similar dates in cases that were researched. For example, in Perez v. Shook, 97-0420 (La.App. 4 Cir. 12/3/97), 703 So.2d 821, the filing date was September 3, 1993. In Reeder v. North, supra, the underlying Supreme Court decision which prompted the malpractice suit occurred on September 3, 1993. Adding to the confusion is the trial court judgment in the underlying suit which was rendered September 13, 1991. Or, perhaps it was simply an oversight by the opinion's author. Regardless, the parties did not note this court's error until after the delay for rehearing had elapsed, thus prompting writs to the Supreme Court.
[2] A contrary interpretation may destroy a vested right and result in constitutional problems.